**Barbara Jean UPSHAW**

v.

**ALVIN INDEPENDENT SCHOOL DISTRICT, Virgil Tiemann, Ella Rodgers, Wanda Howard, and Phillip Brunson.**

**No. CIV.A. G–98–138.**

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 8, 1999.

See also, 991 F.Supp. 599.

Lawrence Bradley Hancock, Shannon Martin Finkelstein and Sayre, Houston, TX, for plaintiff.

Jeffrey L. Rogers, Feldman and Rogers, John David Fischer, Brown McCarroll & Oak, Houston, TX, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

In this action, Plaintiff Barbara Upshaw brings claims under 42 U.S.C. § 1983 for alleged violations of the First and Fifth Amendments. She also alleges slander *per se.* Now before the Court is Defendants' Motion for Summary Judgment. For the reasons stated below, the Motion is **GRANTED.**

### I. FACTS

Plaintiff Upshaw brings her claims against the Alvin Independent School District ("AISD") and the following Defendants in their individual and official capacities: Virgil Tiemann, Superintendent of AISD, Ella Rodgers, Assistant Principal (and later Principal) of Harby Junior High School, Philip Brunson, Assistant Principal of Harby Junior High School, and Wanda Howard, Assistant Principal of Alvin High School.

Upshaw was employed by AISD as a classroom teacher from 1992 to 1997. Until March 25, 1996, Plaintiff taught English at Harby Junior High School. From March 25, 1996 to April 22, 1997, Upshaw was assigned to teach at Alvin High School in the Alternative Education and Student Suspension Center. In January 1997, Plaintiff took a medical leave of absence with an "unknown" anticipated dated of return. On April 22, 1997, Plaintiff tendered her resignation.

Over the course of her employment with AISD, Plaintiff and her husband registered numerous complaints with the School District concerning the education of their children. When Defendant Tiemann became Superintendent in July 1995, he was made aware of the complaints. He held a meeting with the Upshaws and requested that they regularly communicate on an informal basis with Ella Rodgers, the Assistant Principal at Harby, regarding any concerns they had about the education of their son, K.U., at Harby. Nevertheless, Upshaw continued to make formal complaints about the education of her son and about conditions at Harby. She sent copies of her grievances to the AISD Board of Trustees. Classroom doors found unlocked and occasional misplaced student files typify the gravity of her complaints about conditions at Harby. Rodgers, Brunson, and Tiemann state that they spent inordinate amounts of time and energy responding to

the Upshaws' complaints. Upshaw complains that Rodgers assumed a hostile and threatening manner with her after she began reporting alleged violations of school policy and regulations to Superintendent Tiemann.

Defendants allege that "[a]lthough many of Plaintiff's complaints were completely unfounded, she pursued them in a highly accusatory and hostile manner." According to Rodgers, the morale of the staff at Harby became increasingly strained as a result of the Plaintiff's incessant demands regarding K.U.'s education. The tension at Harby was allegedly "exacerbated by Plaintiff's confrontational attitude as a teacher with other faculty members." In December 1995, Plaintiff filed an employee grievance alleging that she was being retaliated against for being a "whistleblower," and she requested a full and complete investigation. Superintendent Tiemann commissioned Clark Roberts, the Executive Director of Secondary Education, to visit with Harby staff to ascertain the validity of Plaintiff's allegations and the impact, if any, on the educational environment. Roberts reported to Tiemann that no staff member, including those identified by Plaintiff, validated her allegations that she had been discriminated against in any manner. Roberts also reported to Tiemann that stress and tension among the faculty at Harby was having a negative impact on staff morale and the educational environment. According to Roberts, most of the staff interviewed identified one primary source of tension on the campus—difficulties with Plaintiff as a peer and/or a parent to K.U. Roberts observed that the morale of the faculty at Harby Junior High had declined dramatically and that many teachers feared that statements they made in meetings—to other teachers or to students—would be retold to Plaintiff and misconstrued by her.

Based in part upon Roberts's investigation, Tiemann denied Plaintiff's "whistleblower" grievances. He subsequently met with Plaintiff and discussed his concerns regarding her relationships within Harby. After meeting with Plaintiff, he concluded that the only logical resolution to the situation was to transfer Plaintiff to another assignment in order to avert a crisis at Harby. Upshaw received notice on February 27, 1996, that she would be transferred to Alvin High School, effective March 25, 1996, and that she would be assigned to the Alternative Education and Student Suspension Center ("SSC").

Plaintiff filed an employee grievance against Tiemann and Roberts, alleging that her reassignment was a "demotion" in retaliation for her filing grievances on behalf of herself and her son. She claimed her new position was a demotion because it was not a teaching position, resulted in decreased duties, required no certification, and resulted in the loss of her position as Chair of the Harby English Department. Prior to the hearing of her grievance, Tiemann agreed that Plaintiff would continue to receive the stipend she had been paid as Chairperson of the Harby English Department, and Plaintiff voluntarily withdrew her grievance. Throughout the 1996–97 school year, Plaintiff continued to find fault with AISD and its staff; she filed a complaint with the Texas Education Agency in which, according to Defendants, she sought to revoke the professional certifications of a dozen school employees. She and her husband also filed a federal lawsuit on behalf of their son alleging that he had been denied a free appropriate education in violation of Section 504 of the Rehabilitation Act and that K.U. was a victim of retaliation due to his parents' outspokenness. The case was ultimately dismissed by this Court on Defendants' Motion to Dismiss. *See K.U. v. Alvin Indep. Sch. Dist.,* 991 F.Supp. 599 (S.D.Tex.1998).

In January 1997 Plaintiff took a medical leave of absence with an "unknown" date of return. She claims she was forced to take medical leave because Defendants' retaliatory conduct had caused her to suffer from clinical depression. In March 1997, three months into Plaintiff's leave of absence, Tiemann notified Plaintiff that no action had been taken to extend her two-year term teaching contract beyond its expiration in May 1998. The letter indicated that no action had been taken to renew Plaintiff's contract because of the District's inability to evaluate Upshaw's performance for the 1996–97 school year (as a result of her leave of

absence) and due to a question regarding whether she met the certification requirements to teach at the high school level. Defendants allege that the decision to take no action on Plaintiff's contract in March of 1997 did not indicate a decision by the District not to renew her contract, but only a decision not to renew it at that time. When Plaintiff resigned in April 1997 her contract still had a full year yet to run. After tendering her resignation, Plaintiff requested and was granted permission to bring her complaints to the AISD Board of Trustees ("the Board"). She aired her complaints in June 1997, but the Board chose not to take any action on them.

## II. ANALYSIS

### A. FIRST AMENDMENT RETALIATION CLAIMS

Upshaw claims that she was retaliated against for exercising her rights under the First Amendment. She alleges that Defendants' retaliatory conduct included two actionable "adverse employment actions"—demotion and constructive discharge. *See Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 554–555 (5th Cir.1997). With respect to Upshaw's demotion claim, the Court need not resolve whether her transfer was in fact a demotion because her claim is time-barred by the two year statute of limitations applicable to § 1983 claims. *See Piotrowski v. City of Houston,* 51 F.3d 512, 514 n. 5 (5th Cir.1995). Upshaw admits that she received notice of her alleged demotion—a reassignment to Alvin High School effective March 25, 1996—in February 1996. She filed suit on March 17, 1998, thus any claims based on conduct occurring more than two years prior to that date, in this case prior to March 17, 1996, are time-barred. Plaintiff attempts to defeat the statute of limitations time bar by alleging that the retaliatory conduct occurred in March on the date her transfer became effective. This is clearly a misstatement of the law. The date from which the limitations period is calculated is the date the plaintiff becomes aware of the defendant's retaliatory conduct. *See McWilliams v. Escambia County School Bd.,* 658 F.2d 326, 330 (5th Cir.1981) (citations omit-

ted). In this instance, Defendants' alleged retaliatory conduct was the decision to transfer Upshaw, and Upshaw was made aware of it in February 1996. Consequently, Plaintiff's retaliation claim based upon her transfer is DISMISSED WITH PREJUDICE. Additionally, the Court notes that Plaintiff withdrew the grievance she filed near the time she was transferred, thus she failed to exhaust the administrative remedies that are a necessary prerequisite to seeking relief from this Court.

Plaintiff's second allegation of retaliatory conduct—constructive discharge—fails on substantive grounds. In order to establish a *prima facie* case for retaliation based upon the exercise of First Amendment rights, Upshaw must show by a preponderance of evidence, that: (1) her speech was protected, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected speech and the adverse employment action. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977). Plaintiff's evidence clearly fails the second prong of the test, thus the Court need not analyze Defendants' alternative and meritorious arguments including qualified immunity and failure to establish a causal connection.

Defendants argue, and the Court agrees, that the facts alleged by Plaintiff do not prove the element of constructive discharge. Plaintiff fails to carry her burden of proving that AISD deliberately made her working conditions so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to quit. *See Faruki v. Parsons, S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir.1997); *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994); *Stewart v. Houston Lighting & Power Co.,* 998 F.Supp. 746, 756 (S.D.Tex.1998). Plaintiff has offered absolutely no evidence to establish that Defendants badgered, harassed, or humiliated her in an effort to encourage her resignation. *See Faruki,* 123 F.3d at 319. Instead, she alleges a chain of events that ultimately caused her to resign. To begin with, Upshaw blames Defendants for causing

her to suffer clinical depression for which she took medical leave from her job at Alvin High School. It is important to note that as a result of her medical leave Upshaw did not even interact with Defendants for at least three months before she resigned. Upshaw attempts to maintain the causal connection between Defendants' conduct and her resignation by claiming that her depression was brought on by her assignment to Alvin High School and by the Defendants branding her as a whistleblower. She was also distraught because she felt her complaints and demands were not responded to adequately. Regardless of the veracity of these particular allegations, they do not even come close to meeting Plaintiff's burden. As stated above, any claims based upon Plaintiff's unhappiness with her alleged demotion are time-barred. The remaining allegations do not involve any affirmative acts on the part of Defendants aimed at forcing Plaintiff to resign. In fact, it is clear from the summary judgment record that Plaintiff brought upon herself any whistleblower reputation as a result of her constant attempts to seek out and report through formal channels even the most minute infractions of school regulations and policy. It is also clear from the summary judgment evidence that Plaintiff's complaints were appropriately addressed. Defendants spent inordinate amounts of time responding to Plaintiff in person and by letter, and many of Plaintiff's claims were dismissed, apparently for lack of merit, by the Texas Education Agency, the AISD Board of Trustees, and this Court in the previous lawsuit filed by Plaintiff on behalf of her son.

Upshaw goes on to argue that the chain of events constituting constructive discharge continued with her receipt of a letter from Defendant Tiemann stating that no action had been taken to renew her contract beyond its expiration in 1998. The normal course of events was to renew teaching contracts in the spring prior to the year the contract expired. In Upshaw's case, however, her taking of medical leave during the entire spring semester of 1997 raised questions about her teaching certification and made it impossible for AISD to evaluate her performance. Upshaw was notified of these facts, but instead of attempting to address AISD's concerns, she

promptly resigned. AISD had made no final decision not to renew Upshaw's contract, and her existing contract was in full effect until May, 1998. Furthermore, the procedure for appealing a "non-renewal" is governed exclusively by the TEX. EDUC. CODE ANN. § 21.206, but Upshaw never sought to exhaust the administrative remedies afforded under the Code. Upshaw has therefore failed as a matter of law to establish that she was forced to resign or even that she would lose future employment. Upshaw's claim that she was constructively discharged in retaliation for exercising her First Amendment rights is thus **DISMISSED WITH PREJUDICE.**

### B. DUE PROCESS CLAIMS

 Plaintiff alleges she was denied procedural due process with respect to her reassignment and her alleged constructive discharge. "Procedural due process entitles a public employee with a property right in [her] employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Fowler v. Smith,* 68 F.3d 124, 127 (5th Cir.1995) (citation omitted). Even if Upshaw's claim with respect to her reassignment to Alvin High School was not time-barred, it is clear from the evidence that Upshaw was afforded all the process due her. Upshaw voluntarily withdrew the grievance she submitted regarding her transfer to Alvin High School. An independent hearing officer had been assigned to hear the grievance, and Defendants were willing and able to proceed but Upshaw unilaterally terminated the grievance proceeding. These facts cannot support a claim for denial of due process. Similarly, Upshaw voluntarily resigned her position with AISD, thus all rights to due process were waived. *See Stone v. University of Md. Med. Sys. Corp.,* 855 F.2d 167, 173 (4th Cir.1988). Defendants did not give Upshaw a pre-termination hearing because they were not aware until after she resigned that she was claiming she had been constructively discharged. Furthermore, despite her voluntary resignation, Tiemann offered Upshaw the opportunity to appear before the AISD Board of

Trustees to air her complaints, and she did. The Board apparently decided no action was warranted with respect to Upshaw's complaints. Plaintiff's due process claims against all Defendants are accordingly **DISMISSED WITH PREJUDICE.**

## C. SLANDER *PER SE* CLAIMS

In her Original Complaint, Plaintiff alleges that Defendants Tiemann, Howard, and Rodgers are individually liable for slander *per se*. Plaintiff's claims fail for at least two reason; first, they are barred by the statute of limitations, and second, they are barred by the doctrine of professional immunity. The statute of limitations for slander *per se* is one year. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002; *Martinez v. Hardy*, 864 S.W.2d 767, 774 (Tex.App.—Houston [14th Dist.] 1993, no writ). The only alleged instance of slander that occurred after March 17, 1997, the date one year prior to the filing of this suit, involves Defendant Howard telling a parent during a parent-teacher conference that Upshaw had been fired. It is indisputable that this statement, if indeed it was made, regards Upshaw's job and was made in the course of an official duty; under the statutory or professional immunity doctrine it is therefore not actionable. *See* TEX. EDUC. CODE ANN. § 22.051(a); *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir.1992). Furthermore, Defendant Howard alleges that she never made such a statement, and Plaintiff offers neither a deposition nor an affidavit from the accusing parent to support her allegation. Instead, Plaintiff offers only inadmissible hearsay—her own self-serving affidavit—in support of her allegation. Plaintiff's slander *per se* claims are therefore **DISMISSED WITH PREJUDICE.**

## III. CONCLUSION

In accordance with the reasoning outlined above, Defendants' Motion for Summary Judgment is **GRANTED.** Plaintiff has utterly failed to establish a material fact as to any deprivation of her Constitutional rights thus all of her Constitutional claims are **DISMISSED WITH PREJUDICE** against all Defendants. Plaintiff has also failed to raise a fact issue as to her allegations of slander *per se*, and these claims are also **DISMISSED WITH PREJUDICE** against all Defendants. Furthermore, the Court agrees with Defendants that they have bent over backward to accommodate Plaintiff in the face of her unrelenting criticism of every aspect of her employment relationship and the education of her children. While the Court generally commends those who take their parental and professional duties responsibly, especially when they involve issues of education, it is clear from the record that Plaintiff took her duties too responsibly. She looked for a slight and an injury behind every action and statement, and when she believed she found one, she pursued it to the highest administrative level possible and eventually brought it to this Court. Perhaps the most disquieting example of Plaintiff's conduct involves her surreptitious taping of conversations with her superiors in which she intentionally provokes them and then misconstrues the meaning of their statements in her Complaint filed with this Court.

Denied the relief she has sought through the formal channels of school administration, Plaintiff now comes before this Court a second time in an attempt to use this tribunal to either vindicate her unfortunate misconceptions or just to vent her angst. Though she has recast her grievances to allege that Defendants are guilty of actionable conduct against her rather than against her son, it is apparent that her core gripe is the same. Plaintiff is frustrated with her inability to micromanage the manner in which AISD's educational process is conducted, not only with respect to her own children, but with respect to all of AISD's students. As a result, she has been a continuing source of tension not only to herself, but also to her colleagues and supervisors—demoralizing her fellow teachers and inhibiting the free exchange of ideas among school personnel. Additionally, she has taken her due process conceptions to preposterous lengths, and as a consequence has consumed the valuable time of high level school officials not only with the voluminous complaints she has registered over a five year period but with the filing of two federal lawsuits. Against the now exten-

sive backdrop of Plaintiff's litigiousness, the Court will very carefully consider sanctioning Plaintiff should Plaintiff file another meritless lawsuit in this Court regarding her relationship with AISD.

Plaintiff is hereby **ORDERED** to file nothing further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, Plaintiff is instructed to seek any further relief to which she may feel she is entitled, on any matter herein addressed, from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Court's Order entered this date, Defendants' Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Defendants. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**