STARNER et al., Appellants,

v.

GUARDIAN INDUSTRIES et al., Appellees.

[Cite as *Starner v. Guardian Industries* (2001), 143 Ohio App.3d 461.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–113.

Decided May 31, 2001.

462

464

*Murray & Murray Co., L.P.A., W. Patrick Murray, William H. Bartle* and *Patrick G. Warner,* for appellants.

*Spieth, Bell, McCurdy & Newell Co., L.P.A., Bruce G. Hearey, Dianne Foley Hearey* and *Edmund W. Searby,* for appellees.

KENNEDY, Judge.

Plaintiffs-appellants, Jane Starner and Heidi Fravel, appeal from a decision of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, Guardian Industries, Guardian Automotive Products, Inc., Guardian Glass Company, and Keith Hoover.

Appellants filed a complaint on June 9, 1998, asserting causes of action for sex discrimination, sexual harassment, negligent failure to provide a safe work environment, retaliation, breach of contract, and aiding others in the commission of acts prohibited by R.C. 4112.02, and seeking injunctive relief, compensatory and punitive damages, and attorney fees. Appellees filed an answer on August 6, 1998, denying appellants' claims and asserting various defenses. Appellees filed a motion for summary judgment on June 16, 1999. Appellants filed a memorandum contra on July 30, 1999, and, on August 30, 1999, appellees filed a reply. Appellants filed a supplemental affidavit and evidence contra appellees' motion for summary judgment on September 27, 1999. Appellees filed a supplementary reply brief on October 12, 1999.

The trial court issued a decision on January 10, 2000, granting appellees' motion for summary judgment. The trial court found that there was insufficient evidence to disregard Guardian Glass's corporate form, so it dismissed appellants' claims against Guardian Industries and Guardian Automotive Products. The trial court found that there were genuine issues of material fact as to when the incidents that served as the basis of appellants' claims occurred, so it denied summary judgment on appellees' statute of limitations defense. The trial court found that appellants failed to establish a prima facie case of gender discrimination, concluding that they failed to present evidence that they were treated differently from similarly situated male employees, or that they were discharged or constructively discharged by appellees. With regard to the hostile environment sexual harassment claims, the trial court found that Fravel's work environment was not sufficiently hostile or abusive to be actionable and that it had not interfered with her work conditions. The trial court found that there was a genuine issue of material fact as to whether Starner's work environment was

hostile or abusive and whether the environment was extreme enough to change the terms and conditions of her employment. However, the trial court found that appellees had established an affirmative defense because Starner failed to fulfill her obligation under Guardian Glass's sexual harassment policy to report incidents of harassment. Thus, the trial court granted appellees' summary judgment on appellants' sexual harassment claims. Finally, the trial court granted summary judgment to appellees on appellants' retaliation, negligence, breach of contract, and other statutory claims. The trial court filed a judgment entry on February 3, 2000, incorporating its prior decision and entering judgment for appellees. Appellants filed a timely notice of appeal and, on appeal, they assert four assignments of error:

*"First Assignment of Error:* The trial court erred by granting defendant Guardian Industries Corp.'s motion for summary judgment as to liability.

*"Second Assignment of Error:* The trial court erred by granting defendants' motion for summary judgment as to plaintiffs' sexual discrimination claims.

*"Third Assignment of Error:* The trial court erred by granting summary judgment as to plaintiffs' sexual harassment claims.

*"Fourth Assignment of Error:* The trial court erred by granting summary judgment as to plaintiffs' claims for constructive discharge."

Appellee Guardian Industries is a privately owned Delaware corporation with headquarters in Auburn Hills, Michigan. Guardian Industries manufactures raw float glass and fabricated glass products for the construction and automotive industries.

Guardian Industries sells float glass to its subsidiary, appellee Guardian Automotive Products, Inc. ("Guardian Automotive"), also a Delaware corporation, which fabricates automotive windows and windshields from the float glass. Guardian Automotive then sells the automotive windows and windshields to various customers, including its subsidiary, appellee Guardian Glass Company ("Guardian Glass"). Guardian Glass is an Ohio corporation with headquarters in Westerville, Ohio. Guardian Glass sells and installs fabricated automotive glass parts made by various manufacturers through approximately thirty-three retail locations in Ohio and other states. Appellee Keith Hoover is the director of retail for Guardian Glass, a position and title that he has held since 1982, and he is responsible for the overall operations of Guardian Glass.

Appellant Jane Starner began working at Guardian Glass in July 1988, as a receptionist in its administrative offices. Starner was promoted to employee benefits manager in March 1989. She initially was supervised by Robin Coleman and later by Paul Janisse, who was retail operations manager at Guardian Glass and who reported to Hoover. In March 1994, Starner was promoted to branch

manager of the Columbus branch, located in Worthington, Ohio. Starner first reported to district manager Justine Butts and later to district manager Debbie Owens after the Columbus branch was reassigned to a different district in December 1995. Owens demoted Starner to customer service representative ("CSR") in March 1996. Starner was initially replaced by Vince Bonadio, a male who only held the position for three weeks and later was replaced by another male. Starner experienced medical problems with her pregnancy, and was placed on paid maternity leave in late April or early May 1996. At the conclusion of her maternity leave in September 1996, Starner resigned rather than returning to work at Guardian Glass.

Appellant Heidi Fravel began her employment with Guardian Glass in December 1994, as a CSR in the Columbus branch reporting to Starner. Fravel was replaced as CSR by Starner when Starner was demoted in March 1996. Although the parties dispute whether Fravel was actually terminated or merely transferred, Fravel obtained a position with the networking facility without any gaps in her employment at Guardian Glass. Fravel resigned her position in July 1997.

 An appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination. *Sadinsky v. EBCO Mfg. Co.* (1999), 134 Ohio App.3d 54, 58, 730 N.E.2d 395, 397–398. An appellate court applies the same standard as the trial court in reviewing a trial court's disposition of a summary judgment motion. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 767–768. Before summary judgment can be granted under Civ.R. 56(C), the trial court must determine that:

"(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

 Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

The Supreme Court of Ohio delineated the allocation of the evidentiary burdens for the moving and the nonmoving party in a summary judgment motion

where the moving party asserts that the nonmoving party cannot prove its case in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274, interpreting *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. In *Dresher*, the Ohio Supreme Court held:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis *sic.*) *Id.*

The court explained that a nonmoving party cannot rest upon the allegations of the pleadings but must respond with affidavits or similar evidentiary materials demonstrating that a genuine issue of material fact exists for trial. *Id.* at 293, 662 N.E.2d at 274, citing Civ.R. 53(E).

In appellants' first assignment of error, they argue that the trial court erred by dismissing appellants' claims against Guardian Industries and Guardian Automotive. We disagree.

Appellants argue that Guardian Industries and Guardian Automotive so dominate and control Guardian Glass that the corporate entities should be disregarded so that all three entities are subjected to liability for the acts that serve as the basis for appellants' claims. Appellees counter that the trial court correctly determined that appellants failed to meet their burden of demonstrating a genuine issue of material fact as to disregarding Guardian Glass's corporate form.

■ Generally, a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation. See *North v. Higbee Co.* (1936), 131 Ohio St. 507, 6 O.O. 166, 3 N.E.2d 391; *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 420–421, 602 N.E.2d 685, 687–688. However, under certain circumstances, the corporate entity may be disregarded and a parent corporation and its subsidiary may be treated as a

single entity. *LeRoux's* at 420–421, 602 N.E.2d at 687–688. In *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075, paragraph three of the syllabus, the Supreme Court of Ohio delineated the test for disregarding a corporate entity:

"The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."

 The party seeking to have the corporate form disregarded bears the burden of proof. *Univ. Circle Research Ctr. Corp. v. Galbreath Co.* (1995), 106 Ohio App.3d 835, 840, 667 N.E.2d 445, 448–449. To survive summary judgment on this issue, appellants had to demonstrate that Guardian Industries, Guardian Automotive, and Guardian Glass are "fundamentally indistinguishable." *Id.*

 Upon a review of the evidence viewed most favorably for appellants, we agree with the trial court that appellants failed to demonstrate any genuine issues of material fact that would allow Guardian Glass's corporate entity to be disregarded. The fact that Guardian Industries processed payroll, provided employment policies, advised on personnel issues, furnished supplies, and provided Guardian Glass employees with corporate credit cards does not rise to the level of control so complete that Guardian Glass had "no separate mind, will or existence of its own" or that these corporations were "fundamentally indistinguishable." The undisputed evidence in the record indicates that neither Guardian Industries nor Guardian Automotive directed the day-to-day operations of Guardian Glass, such as the hiring and termination of employees. While the evidence must be construed most strongly in favor of appellants and cannot be weighed, appellants' own citations to the evidence do not support the broad generalizations in their brief.

Thus, the trial court did not err by dismissing appellants' claims against Guardian Industries and Guardian Automotive. Appellants' first assignment of error is overruled.

In appellants' second assignment of error, they argue that the trial court erred by granting appellees' summary judgment motion with regard to their sex discrimination claims. We agree in part.

Appellants asserted claims of employment discrimination based on sex under R.C. 4112.02(A). Starner asserted that she was paid less than male branch managers and that she was demoted because of her gender and because she was

pregnant. Fravel asserted that she was terminated and denied promotions because of her gender. Appellants also asserted claims for constructive discharge, which will be addressed in relation to their fourth assignment of error. The trial court found that appellants failed to establish a prima facie case of sex discrimination because they failed to produce evidence that they were treated differently from similarly situated male employees and because they cannot establish that they were discharged. Appellants argue that there were genuine issues of material fact and that the trial court erred by weighing the evidence. Appellees counter that appellants failed to produce any evidence regarding similarly situated males and that they failed to establish a prima facie case.

This court summarized the allocation of evidentiary burdens in a sex discrimination claim in *Sutherland v. Nationwide Gen. Ins. Co.* (1994), 96 Ohio App.3d 793, 799–800, 645 N.E.2d 1338, 1342–1343:

"R.C. 4112.02(A) provides that it is an unlawful discriminatory practice for any employer 'because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.' The Ohio Supreme Court has held that 'federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.' *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131.

"In *Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610, 615, 617 N.E.2d 774, 778, the court observed:

" 'As to "disparate treatment," our courts have adopted the formula set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802–805 [93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668, 677–679] (for claims brought pursuant to Title VII), as the analysis for judicial inquiry into complaints alleging disparate treatment in violation of R.C. Chapter 4112. Although the *McDonnell Douglas* formula was developed in response to allegations of racial discrimination in hiring, both federal and Ohio courts have found the formula to be flexible enough to fit the varying factual allegations in Title VII and R.C. Chapter 4112 cases pertaining to sex discrimination and discriminatory discharge, and have modified it accordingly.' (Citations omitted.)

"A complainant in a Title VII case must carry the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green, supra,* at 802, 93 S.Ct. at [1824], 36 L.Ed.2d at 677. 'The burden of establishing a prima facie case of disparate treatment is not onerous.' *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207,

215. If the plaintiff establishes a prima facie case, the burden shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. Finally, 'should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215."

An employer's discriminatory intent can be proven by either the direct evidence method or the indirect method of *McDonnell Douglas. Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 128, 672 N.E.2d 145, 147–148. Appellants argued the indirect method in their brief, and the trial court employed the indirect method. To establish a prima facie case of sex discrimination by the indirect evidence method, a plaintiff must demonstrate that:

"(1) [H]e or she was a member of a statutorily protected class; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class." *Tessmer v. Nationwide Life Ins. Co.* (Sept. 30, 1999), Franklin App. No. 98AP–1278, unreported, 1999 WL 771013.

In *Tessmer,* this court held that actionable employment discrimination encompasses many forms of adverse employment actions and is not limited merely to termination of employment, decrease in salary, or material loss of benefits. *Id.* Thus, adverse employment actions include demotions and transfers to jobs with diminished responsibilities. *Id.*

Starner asserts that her demotion from branch manager to CSR was the result of sex discrimination. A review of the evidence construed most favorably for Starner reveals a genuine issue of material fact that she demonstrated a prima facie case of sex discrimination based on her demotion. As a woman who was pregnant at the time, she was a member of a protected class under R.C. 4112.02(A). A demotion, even without a reduction of pay, is an adverse employment action, especially since Starner's potential for bonuses was diminished. There is a dispute of fact as to whether Starner was qualified for the branch manager position. Owens, Starner's supervisor, indicated in her affidavit that Starner was unqualified for the position, despite the fact that she held the position for nearly two years. Appellants countered with evidence indicating Starner was performing well, such as the testimony of Starner, Fravel, and Randall Conn, as well as profit-and-loss statements. Finally, Starner first was

replaced by Vince Bonadio, a male, regardless that he remained in the position for only three weeks, and then was replaced by another male.

Appellees provided evidence to demonstrate a legitimate, nondiscriminatory reason for Starner's demotion. Owens's affidavit indicated that Starner was demoted for performance reasons. However, Starner provided evidence that creates a genuine issue of material fact that appellees' proffered reason was pretextual. Specifically, Owens's comments to Starner and Fravel, that male managers were the way of Guardian Glass, as well as the evidence that Starner was performing well, that the Columbus branch was profitable at least one quarter, and that Starner had received a bonus, taken together, demonstrate a genuine issue of material fact. Thus, there were genuine issues of material fact that precluded summary judgment on Starner's sex discrimination claim based on her demotion.

Fravel asserts that her termination as CSR, which appellees contend was a transfer to another department, was the result of sex discrimination. Additionally, Fravel argues that she was denied promotions because of sex discrimination. However, even when the evidence is viewed most favorably for Fravel, there are no genuine issues of material fact that she failed to demonstrate a prima facie case of sex discrimination. Fravel's claim, based on her termination as CSR, fails because she was not replaced by a male. She was replaced as CSR by Starner, whom she admits was more qualified. Moreover, Fravel offers no authority for her argument that because Starner was replaced by a male, she was thereby indirectly replaced by a male. Additionally, her claim that she was denied promotions also fails to create a genuine issue of material fact. Fravel asserts that she was being groomed for a branch manager position that she was denied, yet she admitted in her deposition that no openings ever occurred. With regard to the human resources position that was given to male employee Ted Arnholt, Fravel acknowledged that she did not apply for the position. In *Sayre v. Ameritech Pay Phone Service, Inc.* (July 20, 1999), Franklin App. No. 98AP–1315, unreported, this court held that the appellant could not establish a prima facie case of employment discrimination where she failed to establish that she applied for the position that she allegedly had been denied. Thus, the trial court properly granted summary judgment on Fravel's sex discrimination claims.

For appellant Starner's disparate treatment claim, she must demonstrate (1) that she is a member of a protected class, and (2) that she was treated differently from similarly situated employees who were not members of a protected class. *Sutherland,* 96 Ohio App.3d at 801, 645 N.E.2d at 1343–1344. Starner asserts that she was treated differently from male branch managers, in that she was required to undergo a trial period before receiving the title and pay of a branch manager. Additionally, she argues that she was paid less than male

branch managers. Starner's deposition testimony indicated that she did not have access to actual salary information for branch managers when she was in human resources, but that she knew from life insurance designations the range of salaries for male branch managers. Additionally, she stated that her supervisor Justine Butts told her that she was paid less than male branch managers. The trial court rejected this evidence and concluded that it was insufficient to establish any pay disparity.

However, even assuming *arguendo* that this evidence, when construed most favorably for appellants, demonstrates a difference in pay, Starner's claim of disparate treatment still fails because she did not meet her evidentiary burden of demonstrating that the male branch managers were similarly situated. In *Sutherland,* this court examined *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, in which the Sixth Circuit discussed the requirements of "similarly situated" individuals for the purposes of a disparate treatment analysis. *Sutherland,* 96 Ohio App.3d at 801, 645 N.E.2d at 1343–1344. Quoting *Mitchell,* this court noted that, to establish a prima facie claim of disparate treatment, the plaintiff must show that the comparable individuals are similarly situated in all respects. *Id.* This court rejected the argument that the similarly situated individuals must be identical in all respects or that they must have an identical supervisor. *Id.* at 802, 645 N.E.2d at 1344–1345. However, this court then examined factors, such as the salary grade, actual salary, experience, educational background, benefits, job title, and other privileges for specific male employees whom the plaintiff asserted were situated similarly to her. *Id.* at 804–805, 645 N.E.2d at 1345–1347.

Here, appellants failed to introduce evidence to serve as a basis of comparison between Starner and specific male branch managers whom they asserted were similarly situated. The only evidence in the record is Starner's deposition testimony that "Mike" in Michigan and Rich Shuppe at the Euclid store had a higher base salary than she. "Mike" had been the lead technician in Michigan when he was promoted and he had worked at the largest and most successful store in Michigan. Rich Shuppe, who managed a medium-sized store in terms of sales, had no prior experience in the glass industry but had a year or two longer time at Guardian than Starner. Even when this evidence is viewed most favorably for Starner, it does not create a genuine issue of material fact that these two male branch managers were situated similarly to Starner, who was promoted from human resources. Thus, the trial court did not err in granting summary judgment on Starner's disparate treatment claim.

Therefore, appellants' second assignment of error is sustained as to Starner's sex discrimination claim based on her demotion and overruled as to Fravel's sex discrimination and Starner's disparate treatment claims.

In appellants' third assignment of error, they argue that the trial court erred by granting summary judgment as to appellants' sexual harassment claims. We agree in part.

The trial court found that Fravel's work environment was not sufficiently hostile or abusive to be actionable. Although the trial court found that there was a genuine issue of material fact that Starner's work environment was hostile and abusive and that it interfered with her work performance, it concluded that appellees had established an affirmative defense because Starner failed to report incidents of sexual harassment to management at Guardian Glass. Appellants argue that they were subjected to hostile environment sexual harassment at Guardian Glass and that the trial court erred by weighing evidence and by granting summary judgment for appellees. Appellees assert that appellants failed to demonstrate that the environment at Guardian Glass was severe or pervasive enough to be actionable and that, even if the environment qualified, they satisfied the elements of the affirmative defense.

The Supreme Court of Ohio addressed the elements of a hostile environment sexual harassment claim in *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 175–177, 729 N.E.2d 726, 732–733:

"In *Meritor Sav. Bank, FSB v. Vinson* (1986), 477 U.S. 57, 64–66, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49, 58–59, the United States Supreme Court rejected the view that Title VII is unconcerned with purely psychological aspects of the workplace environment and, therefore, prohibits sexual harassment only when it is directly linked to the grant or denial of an economic benefit. Recognizing that '[t]he phrase "terms, conditions, or privileges of employment" evinces a congressional intent " 'to strike at the entire spectrum of disparate treatment of men and women' " in employment,' *id.* at 64, 106 S.Ct. at 2404, 91 L.Ed.2d at 58, the high court explained that a man or woman should not have to ' "run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living." ' *Id.*, 477 U.S. at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 59, quoting *Henson v. Dundee* (C.A.11, 1982), 682 F.2d 897, 902.

"Accordingly, the court held that 'a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.' *Id.* at 66, 106 S.Ct. at 2405, 91 L.Ed.2d at 59. To do so, the plaintiff must show that the harassing conduct was 'sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." ' *Id.* at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 60, quoting *Henson, supra,* 682 F.2d at 904.

"In *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 21–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 302, the court further explained:

" 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.'

"However, the conduct need not be psychologically injurious to be actionable. 'A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.' *Id.*, 510 U.S. at 22, 114 S.Ct. at 370–371, 126 L.Ed.2d at 302.

"Accordingly, we hold that a plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination 'because of * * * sex' by proving either of two types of sexual harassment: (1) 'quid pro quo' harassment, *i.e.*, harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) 'hostile environment' harassment, *i.e.*, harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment.

"In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." (Footnote omitted.)

In *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 723, 729 N.E.2d 813, 818–819, this court discussed the circumstances that must be considered in evaluating a sexual harassment claim:

"Conduct that is merely offensive is not actionable as hostile work environment harassment under Title VII. *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301–302. Title VII is violated '[w]hen the workplace is permeated with "discriminatory intimidation, ridicule, and insult," * * * "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ' *Id.* at 21, 114 S.Ct.

at 370, 126 L.Ed.2d at 301. To be actionable under Title VII, conduct must be severe or pervasive enough to create both an objectively hostile or abusive work environment—one that a reasonable person would find hostile or abusive—and a subjectively hostile work environment—one that the victim perceived to be hostile or abusive. Whether an environment is hostile or abusive must be determined by looking at all the circumstances. While no single factor is required, circumstances to consider may include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to merely an offensive utterance, whether the conduct unreasonably interferes with an employee's work performance, and whether psychological harm results."

Upon a review of the evidence, viewed most favorably for appellants, we agree with the trial court that there is no genuine issue of material fact that the conduct in Fravel's work environment, while sometimes offensive, was not sufficiently severe or pervasive to be actionable. It was offensive for Fravel to have to endure being looked up and down and stared at by Mike Shuppe and Keith Hoover, but she had only very limited contact with them. For example, Fravel noted in her testimony that Shuppe visited the Columbus branch only two or three times during her time there, and she indicated that Hoover only looked her up and down one time. Thus, this conduct was rare. While she was asked several times to attend Guardian Glass parties after work hours where the male employees allegedly touched the women and made offensive sexual comments, Fravel only attended one party during her employment. Once, she overheard co-workers in the networking department looking at a Victoria's Secret catalog and discussing the women's breasts, but the comments were not directed to her. She was told a dirty joke by a co-worker on one occasion and was teased for being a preacher's wife, both of which were offensive.

Fravel was touched by male employees on a few occasions while at Guardian Glass. Once, upon greeting her, Mike Shuppe put his arm around her waist and pulled her close to him when he was at the Westerville office. While it was offensive to Fravel, she conceded that Shuppe did not say anything sexual and that it was just a friendly greeting. Paul Janisse also pulled Fravel to his waist once and tickled her side when she was at the Columbus branch. At the one Guardian Glass party she attended, two men from Upper Sandusky who were drunk came up to her, put their arms around her, and hugged her.

While this court does not condone such conduct, especially in the workplace, when taken as a whole it occurred as a few isolated incidents over the course of Fravel's employment. Some of this conduct clearly was offensive and made her uncomfortable. However, when it is viewed in terms of frequency and severity as required by *Peterson,* it was not sufficiently severe or pervasive to alter the terms of her employment and create an abusive work environment. Moreover,

we cannot say that, under the objective standard, a reasonable person would find that Fravel's work environment when considered in its entirety was hostile or abusive. Thus, the trial court did not err by granting summary judgment on Fravel's sexual harassment claim.

With regard to Starner, we also agree with the trial court that there is a genuine issue of material fact that a reasonable person would find her work environment hostile or abusive. It is clear from Starner's testimony that the harassment was unwelcome, and the nature of the comments and actions also reflect that the harassment was based on Starner's sex. Taken as a whole, the harassment Starner endured was sufficiently severe and pervasive to affect the terms and conditions of her employment. The conduct Starner was subjected to was perpetrated by supervisors, as well as other male employees, and caused her to avoid contact with them. Without considering the time-barred claims of sexual advances and propositions of Janisse, Starner was subjected to touching and offensive comments by other supervisors, including Hoover. When incidents were brought to Janisse's attention, he did not take any action and made excuses for the perpetrators. Starner was shown pictures of a female stripper at a Guardian Glass district managers' meeting. Hoover referred to female management employees as "bitches" and "cunts," even in Starner's presence. When working in the administrative office, Starner observed pornographic faxes being sent in from the branches. The Guardian Glass workplace was filled with sexual jokes. Starner was pressured to attend company parties, to drink, and to submit to the touching and offensive comments made by male employees. Thus, there is at least a genuine issue of material fact that Starner satisfied the *Hampel* test for demonstrating a claim of hostile environment sexual harassment.

However, despite finding a genuine issue of material fact, the trial court granted summary judgment for appellees because it concluded that appellees established an affirmative defense. In *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633, 655, and *Faragher v. Boca Raton* (1998), 524 U.S. 775, 807–808, 118 S.Ct. 2275, 2292–2293, 141 L.Ed.2d 662, 688–690, the Supreme Court of the United States established an affirmative defense for employers who enact sexual harassment policies:

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take

advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."

This court adopted the *Burlington/Faragher* affirmative defense in *Peterson. Id.,* 133 Ohio App.3d at 723, 729 N.E.2d at 818–819. Other Ohio courts also have adopted the *Burlington/Faragher* affirmative defense. See, *e.g., Stepic v. Penton Media, Inc.* (Dec. 14, 2000), Cuyahoga App. Nos. 77318, 77737, unreported, 2000 WL 1867399; *Lamar v. A.J. Rose Mfg. Co.* (Oct. 11, 2000), Lorain App. No. 99CA007326, unreported, 2000 WL 1507919; *Wille v. Hunkar Lab., Inc.* (1998), 132 Ohio App.3d 92, 724 N.E.2d 492 (First Appellate District).

The trial court found that the affirmative defense was applicable because neither Starner's demotion nor her allegation of constructive discharge was related to sexual harassment. It found that appellees established the affirmative defense because Guardian Glass had an antiharassment policy with a complaint procedure in place, and because it found that Starner failed to fulfill her obligation under the policy to report incidents of sexual harassment to management.

▮▮▮ Initially, we agree with the trial court that appellees have the opportunity to assert the affirmative defense because the incidents of sexual harassment upon which Starner bases her claims all occurred while she was at Guardian Glass's administrative offices and before she became branch manager. Thus, her subsequent demotion and assertion of constructive discharge were not related to the sexual harassment. However, when the evidence is viewed most favorably for Starner, there are genuine issues of material fact that Guardian Glass did not properly respond to sexual harassment complaints and that Starner did complain to management about sexual harassment directed at her. In *Brentlinger v. Highlights for Children* (2001), 142 Ohio App.3d 25, 753 N.E.2d 937, this court noted that it is not enough for an employer merely to have a sexual harassment policy; the acts of an employer must be evaluated to determine whether the employer acted reasonably. Starner's deposition testimony indicated that, while

Guardian Glass had a sexual harassment policy, many employees were unaware of it. Additionally, when she brought sexual harassment complaints to the attention of Janisse, he either ignored them or made excuses for the perpetrator. Starner also indicated that, although she never made any formal complaints in writing, she did tell Janisse about the actions of male employees, including Hoover, that made her uncomfortable. In *Peterson*, this court found that an employee's verbal complaints of sexual harassment, as well as the employer's apparent lax follow-up on complaints, was sufficient to create a genuine issue of material fact as to whether the affirmative defense was established. *Peterson*, 133 Ohio App.3d at 726, 729 N.E.2d at 820–821. Thus, the trial court erred by granting appellees' summary judgment on Starner's sexual harassment claim.

Consequently, appellants' third assignment of error is overruled with regard to Fravel's sexual harassment claim and sustained with regard to Starner's sexual harassment claim.

In appellants' fourth assignment of error, they argue that the trial court erred by granting summary judgment as to appellants' constructive discharge claims. We agree in part.

The trial court concluded that appellants were not constructively discharged because their work conditions were not so intolerable that a reasonable person under similar circumstances would have felt compelled to resign. Appellants assert that they were constructively discharged by appellees. Appellees counter that appellants voluntarily quit because they were dissatisfied with their jobs.

In *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph four of the syllabus, the Supreme Court of Ohio delineated the test for constructive discharge:

"The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign."

Additionally, the Supreme Court of Ohio provided guidance for courts applying the test for constructive discharge:

"In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable simply to attain the 'discharge' label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of coemployees, inquiries about retirement intentions, and expressions of a

preference for employees outside the protected group." *Id.* at 589, 664 N.E.2d at 1281.

When the evidence is viewed most favorably for Starner, there is a genuine issue of material fact that she was constructively discharged. Starner was demoted without a pay reduction, but her benefits and potential for bonuses decreased. While pregnant, she was told that she could either take the demotion to CSR or be fired. She was told by Owens that her demotion was because of Hoover's preference for male managers. She was required to continue doing the work of branch manager even after the demotion until a replacement was found. Starner was yelled at and threatened by Owens in front of other employees. Starner, while pregnant, was forced to work in an eighty-five-degree office for three days while the air conditioning was broken, and Owens deliberately delayed getting it fixed. She was not allowed to go to the restroom because she had to answer the phones. The stress and the heat caused her to go into early labor. She was placed on medical leave by her doctors to keep her out of this work situation and then maternity leave after the birth of her child. Starner repeatedly requested transfer out of the Columbus branch, but it was denied.

During her maternity leave, she learned from discussions with Bonadio that the situation at the Columbus branch had not changed, so she began looking for other jobs. She decided to resign two weeks prior to her return date. She felt that she could not survive emotionally if she had to return to work under those conditions. She did not want to come home from work every day as an emotional wreck. The day she was scheduled to return she spoke with Tammy Contino, Guardian Glass's controller, and confirmed that situation had not changed. Therefore, Starner felt that she had no choice but to resign at the end of her maternity leave, instead of returning to Guardian Glass.

Appellees cite case law from other jurisdictions for the proposition that an employee who does not return to work after a period of leave to investigate whether their work conditions have changed cannot assert constructive discharge. *Hanenburg v. Principal Mut. Life Ins. Co.* (C.A.8, 1997), 118 F.3d 570; *Upshaw v. Alvin Indep. School Dist.* (S.D.Tex.1999), 31 F.Supp.2d 553; *Woods–Pirozzi v. Nabisco Foods* (1996), 290 N.J.Super. 252, 675 A.2d 684. However, our review of these cases indicates that these courts reviewed the totality of the circumstances in reaching the conclusion that the employee was not constructively discharged, rather than establishing a rule that an employee must return to work after a leave period to assert constructive discharge. *Hanenburg,* at 574–575; *Upshaw,* at 557–558; *Woods–Pirozzi,* at 276–277, 675 A.2d at 696. Here, Starner was able to determine by speaking to other employees that her work conditions had not changed. Therefore, under these circumstances, she did not need to return to work.

With regard to Fravel's claim of constructive discharge, even when the evidence is viewed most favorably for her, there are no genuine issues of material fact that she was not constructively discharged. While Fravel was terminated from her CSR position, she was able to secure a position in the networking department with no reduction in pay. Other than a few isolated incidents that made her uncomfortable, Fravel did not face sexual harassment in her new position. Although she asserts that she was denied promotions, as discussed above, no branch manager positions were open and she did not apply for the position in human resources. Fravel indicated in her deposition testimony that she enjoyed working in the networking department and that she liked her job very much. Fravel resigned in July 1997, because she felt that it was a go-nowhere position, and the only unpleasant part of her job was her belief that she could not get ahead at Guardian Glass. She even considered coming back when she was contacted by Anderson about returning to her former position in networking. Under these circumstances, a reasonable person would not have been compelled to resign.

Therefore, appellants' fourth assignment of error is sustained as to Starner's claim of constructive discharge and overruled as to Fravel's claim.

Based upon the foregoing reasons, appellants' first assignment of error is overruled, while appellants' second, third and fourth assignments of error are sustained in part and overruled in part. The decision of the Franklin County Court of Common Pleas is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion. Additionally, appellees' motions to strike are denied.

*Judgment accordingly.*

PETREE and LAZARUS, JJ., concur.