## In re CARDINAL HEALTH, INC. ERISA LITIGATION,

### No. C2–04–643.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 14, 2005.

James Edward Arnold, Clark, Perdue, Arnold & Scott, Charles Horne Cooper, Jr., Cooper & Elliott, David P. Meyer, David P. Meyer & Associates Co. LPA, John A. Harris, IV, Kitrick & Lewis Co. LPA, Mark Mathew Kitrick, Mark D. Lewis, Michael A. Snyder, Shumaker Loop & Kendrick LLP, Patrick G. Warner, Rex H. Elliott, Stephen Eric Chappelear, Hahn Loeser & Parks, Columbus, OH, Robert A. Izard, Schatz & Nobel PC, Hartford, CT, Alfred G. Yates, Jr., Gerald Louis Rutledge, Law Office of Alfred G. Yates Jr. PC, Pittsburgh, PA, Ann Louise Lugbill, Richard Lawrence Norton, Katz Greenberger & Norton, Cincinnati, OH, Arthur M. Kaufman, Hahn Loeser & Parks LLP, Cleveland, OH, Derek W. Loeser, Keller & Rohrback LLP, Elizabeth A. Leland, Lynn Lincoln Sarko, Seattle, WA, Douglas S. Johnston, Jr., Barrett Johnston & Parsley, George E. Barrett, James G. Stranch, III, Branstetter Kilgore Stranch & Jennings, Timothy L. Miles, Nashville, TN, Edwin J. Mills, Stull, Stull and Brody, Lee Squitieri, Squitieri & Fearon LLP, New York City, James Dollar Baskin, III, Baskin Law Firm, Austin, TX, Joe R. Whatley, Jr., Whatley Drake LLC, Birmingham, AL, Kenneth A. Wexler, Wexler Firm, Chicago, IL, for Plaintiff.

John Kevin Cogan, Jones, Day, Brian G. Selden, J. Todd Kennard, Mark Alan Johnson, Baker & Hostetler, Shawn J. Organ, Columbus, OH, Geoffrey J. Ritts, Jones, Day, Reavis & Pogue, John M. Newman, Jr., Cleveland, OH, for Defendant.

## ORDER APPOINTING LEAD COUNSEL AND LIAISON COUNSEL

MARBLEY, District Judge.

### I. INTRODUCTION

This matter comes before the Court on five Plaintiffs' motions to appoint Lead Counsel and Liaison Counsel for this Consolidated ERISA Action.[1] The ERISA Plaintiffs are suing Cardinal Health, Inc. ("Cardinal Health") on behalf of the Cardinal Health Profit Sharing, Retirement and Savings Plan ("Cardinal Plan") and the Syncor International Corporation. Employees' Savings and Stock Ownership Plan ("Syncor Plan"). Five of the Plaintiffs have moved to appoint Lead Counsel and Liaison Counsel. The Court **GRANTS** the McKeehan Plaintiffs' Motion to Appoint Co–Lead Plaintiffs, Co–Lead Counsel, and Liaison Counsel. [Docket No. 8,

---

1. On December 15, 2004, the Court consolidated fourteen ERISA actions into one Consolidated ERISA Action.

Case No. 04–643]; **DENIES** the DeCarlo and Heitholt Plaintiffs' Motion to Appoint Lead Plaintiffs, Co–Lead Counsel and Liaison Counsel [Docket No. 22, Case No. 04–643]; **DENIES** the Salinas and Jones Plaintiffs' Motion to Appoint Co–Lead ERISA Plaintiffs, Co–Lead ERISA Counsel, and Liaison ERISA Counsel [Docket No. 24, Case No. 04–643]; **DENIES** in part and **GRANTS** in part Plaintiff Daniel Kelly's Motion to Consolidate the ERISA cases and to Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 7, Case No. 04–746]; and **DENIES** in part and **GRANTS** in part Plaintiff Harry Anderson's Motion to Consolidate the ERISA cases and to Appoint Co–Lead Counsel and Liaison Counsel. [Docket No. 9, Case No. 04–725].[2]

| NAMED PLAINTIFFS | PROPOSED LEAD COUNSEL | PROPOSED LIAISON COUNSEL |
|---|---|---|
| *McKeehan v. Cardinal Health, Inc.,* No. C2–04–643 *Ferguson v. Cardinal Health, Inc.,* No. C2–04–668 | Schatz & Nobel, PC (Hartford, CT) Stull, Stull & Brody (New York, NY) | Clark, Perdue, Roberts & Scott, LPA (Columbus, OH) |
| *DeCarlo v. Cardinal Health, Inc.,* No. C2–04–684 *Heitholt v. Cardinal Health, Inc.,* No. C2–04–736 | Keller Rohrback, LLP (Seattle, WA) Schiffrin & Barroway, LLP (Bala Cynwyd, PA) | Hahn, Loeser, & Parks LLP (Columbus, OH) |
| *Anderson v. Cardinal Health, Inc.,* No. C2–04–725 | Emerson Poynter, LLP (Little Rock, Arkansas) | David P. Meyer & Assoc. Co., LPA (Columbus, OH) |
| *Salinas v. Cardinal Health, Inc.,* No. C2–04–745 | Barrett, Johnston & Parsley (Nashville, TN) Whatley Drake, LLC (Birmingham, AL) | Kitrick and Lewis Co., LPA (Columbus, OH) Ann Lugbill (Cincinnati, OH) |
| The Kelly Group (comprised of *Kelly v. Cardinal Health, Inc.,* No. C2–04–746; *Paylan v. Cardinal Health, Inc.,* No. C2–04–778; *Cohen v. Cardinal Health, Inc.,* No. C2–04–789; *Black v. Cardinal Health, Inc.,* No. C2–04–790; *Alston v. Cardinal Health, Inc.,* No. C2–04–815; *Brister v. Cardinal Health, Inc.,* No. C2–04–828) | Squitieri & Fearon, LLP (New York, NY) Wechsler Harwood, LLP (New York, NY) | Katz, Greenberger & Norton, LLP (Cincinnati, OH) |

## II.  ANALYSIS

### A.  Overview of the Court's Role in Appointing Lead Counsel

Because of the large number of parties in this ERISA action, efficient management of the action mandates the selection of lead counsel and liaison counsel. Howard B. Newberg and Alba Conte, *Newberg on Class Actions* § 9.31, at 9–82 (3d ed. 1992) ("Newberg"). Selection of lead counsel is a duty often left to the court if the parties cannot decide amongst themselves. *Id.* § 9.35, at 9–95. Courts should consider the following factors when appointing lead counsel: experience; prior success record; the number size, and extent of involvement of represented litigants; the advanced stage of proceedings in a particular suit; and the nature of the causes of action alleged. *Id.* § 9.35, at 9–97.

Federal Rule of Civil Procedure 23(g), which outlines the requirements for class counsel, requires, above all, that the chosen counsel "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B). Although the case sub judice involves only a putative class, Rule 23(g)(2)(a) will apply if the class is certified. *See generally In re Williams Co. ERISA Litig.,* No. 02–CV–153–H(M) (N.D.Okla. Oct. 28, 2002) (order appointing lead counsel in which the court considered the needs a certi-

**2.** The Motions of Plaintiff Kelly and Plaintiff Anderson are **GRANTED** with respect to their motions to consolidate, but **DENIED** with respect to their motions to appoint lead counsel.

fied class would have even though, at the time of the order, the class was merely a putative one).

Rule 23(g) enumerates the following factors a court must consider when choosing lead counsel:

- work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources counsel will commit to representing the class.

Fed. R. Civ. Pro. 23(g)(1)(C)(i).[3]

Complex litigation often involves numerous parties with similar interests, such that traditional procedures in which all papers are filed with every counsel becomes unduly cumbersome. *Manual for Complex Litigation* (4th ed.2004)("MCL") § 10.22 (1995). Courts can effectively help manage such litigation by appointing lead and liaison counsel. *Id.* Before appointing lead counsel, courts should engage in an "independent review" of attorneys' submissions regarding lead counsel and "ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *Id.* at § 10.221. Additionally, the court should be confident that any counsel appointed will fulfill its obligation "to act fairly, efficiently, and economically in the interest of all parties and parties' counsel." *Id.; Goodyear Tire & Rubber Co. ERISA Litig.,* No. 5:03–cv–02182 (N.D.Ohio Apr. 22, 2004) (order appointing lead counsel and noting that the designated counsel must be "qualified and responsible . . . [and] fairly and adequately represent all of the parties on their side").

**3.** The rule also provides that a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(c)(ii).

**4.** According to the McKeehan Plaintiffs, Joseph Meltzer, from Schiffrin & Barroway, asked Robert Izard, from Schatz & Nobel, to prosecute the Cardinal Health litigation as co-lead counsel.

## B. Applicants for Lead Counsel

### i. McKeehan Plaintiffs Proposed Counsel: Schatz & Nobel and Stull, Stull & Brody

■ Each firm has an impressive resume and is qualified to be lead counsel, but the Court finds the McKeehan Plaintiffs' proposed counsel, Schatz & Nobel and Stull, Stull & Brody, will best be able to represent fairly and adequately the class because of their extensive experience in ERISA litigation. *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 702 (S.D.Fla.2004) (finding the proposed counsel's "experience in, and knowledge of, the applicable law in this field" the "most persuasive" factor when choosing lead counsel).

Schatz & Nobel and Stull, Stull & Brody have been appointed lead or co-lead counsel in several major ERISA litigations and have an established relationship with one another. *See, e.g., Overby v. Tyco Int'l Ltd.,* No. 2–CV–1357–B (D.N.H. Dec. 20, 2002) (order appointing Schatz & Nobel and Stull, Stull & Brody to serve as co-lead counsel and finding that the firms have the necessary resources and skills); *In re AOL Time Warner, Inc. Sec. and ERISA Litig.,* No. 02 CV 8853, MDL Docket No. 1500 (S.D.N.Y.2003) (listing Schatz & Nobel and Stull, Stull & Brody as co-lead counsel); *In re AEP ERISA Litig.,* No. C2–03–67 (S.D.Ohio July 8, 2003) (order appointing Schatz & Nobel and Stull, Stull & Brody co-lead counsel). The doubts expressed by other Plaintiffs, namely the Heitholt Plaintiffs, regarding the competency of Schatz & Nobel are undermined by the fact that the Heitholt Plaintiffs' proposed co-counsel, Schiffrin & Barroway, asked Schatz & Nobel to be its co-lead counsel in the case sub judice.[4] Schiffrin & Barroway paired with another firm when Schatz & Nobel declined the invitation.

Robert Izard declined due to Schiffrin & Barroway's involvement in the *Brown v. Syncor International Corp.,* Case No. CACV03–6503 (N.D.Cal.) (complaint filed on Sept. 11, 2003) ("Syncor Action"). *Response of the McKeehan and Ferguson ERISA Plaintiffs to Other Motions for Appointment of Lead Plaintiffs and Lead Counsel* (Oct. 4, 2004) (No. 04–643).

Likewise, the Court also finds the proposed co-liaison counsel, Clark, Perdue, Roberts & Scott, LPA, competent and able to carry out the duties required of liaison counsel.

Schatz & Nobel and Stull, Stull & Brody have also demonstrated a commitment to identifying and investigating potential claims in the action. *See* Fed.R.Civ.P. 23(g)(1)(C)(i) (explaining that courts should consider the work counsel has done in identifying or investigating potential claims in the action). The Court finds that the McKeehan Plaintiffs' complaint, while not as detailed or lengthy as some Plaintiffs' complaints, adequately meets the requirements of Federal Rule of Civil Procedure 8, which requires only a short and plain statement of claims. Fed.R.Civ.P. 8(a) ("A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."); *see In re CMS Energy ERISA,* 312 F.Supp.2d 898, 909 (E.D.Mich.2004) (holding heightened pleading not necessary in ERISA actions because plaintiffs "are asserting a breach of fiduciary duty, not an intent to deceive"). Here, the McKeehan Complaint contains the grounds for jurisdiction and outlines the two counts on which the Plaintiffs believe relief should be granted, and identifies the relief requested. *McKeehan Complaint and Jury Demand,* No. 04–643, at ¶¶ 44–60 (filed July 28, 2004).

Additionally, the McKeehan Plaintiffs have demonstrated their consistent commitment to this case by filing several well-argued briefs with the Court on a range of issues, including consolidation versus coordination and various aspects of Lead Counsel appointments.

The Court also finds that Schatz & Nobel and Stull, Stull & Brody will be able to commit adequate resources. *See Manual for Complex Litigation* § 10.221 (instructing courts to ensure the designated counsel is able to represent adequately all of the parties on their side). Although the Heitholt Plaintiffs allege that this case's demands will overwhelm Schatz & Nobel and Stull, Stull & Brody, the Court surmises that if these firms managed the workload in similarly large ERISA suits on prior occasions, they can handle this litigation, too.

In sum, the Court finds that Schatz & Nobel and Stull, Stull & Brody have a high level of ERISA expertise and are willing to commit each firm's resources to this case such that they fairly and adequately represent all parties on their side. The Court also finds that, should the putative class be certified, these firms have the experience and resources to represent adequately the certified class. The Court hereby **GRANTS** the McKeehan Plaintiffs' Motion to Appoint Lead Counsel and Liaison Counsel.

### ii. Heitholt Plaintiffs: Keller Rohrback and Schiffrin & Barroway

■ Schiffrin & Barroway and Keller Rohrback have impressive ERISA backgrounds and have been appointed by several courts to be lead counsel in major ERISA litigation, but the Court finds that the Plaintiffs' interests will be better served by the McKeehan Plaintiffs' proposed counsel for two reasons.

First, several Plaintiffs argue that Schiffrin & Barroway's representation of the ERISA class in *Brown v. Syncor International Corp.,* Case No. CACV03–6503 (N.D.Cal.) ("Syncor Action") (complaint filed on Sept. 11, 2003), will create a conflict of interest because the defendant, Syncor International Corp. ("Syncor"), merged with Cardinal Health in June 2002.[5] Plaintiffs argue that Cardinal Health will be liable for any judgments or settlement costs imposed on Syncor, thus reducing the settlement funds available in the case sub judice and creating an irreconcilable conflict of interest for Schiffrin & Barroway. Plaintiffs also assert that Schiffrin & Barroway's representation of the Syncor Plan participants both against Syncor and against Cardinal Health will create a situation in which one group of plaintiffs is inevitably favored.

**5.** Syncor and Cardinal Health executed an Agreement and Plan of Merger on June 14, 2002 ("Merger Agreement"), which was consummated in an Securities and Exchange Commission filing on January 1, 2003.

The Heitholt Plaintiffs, however, insist that no conflict of interest exists because Syncor, now renamed Cardinal Health 414, Inc. ("Cardinal 414"), and Cardinal Health have a parent/subsidiary relationship and assert that a subsidiary's liability does not extend to the parent corporation. The Heitholt Plaintiffs also point to the Merger Agreement, which states that "Syncor shall continue its existence under the laws of the State of Delaware as a wholly owned subsidiary of Cardinal."[6] *Merger Agreement* at ¶ 1.1.

Counsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets. *See Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D.Ohio 1992) (citing *Jackshaw Pontiac, Inc. v. Cleveland Press Publ'g. Co.*, 102 F.R.D. 183, 192 (N.D.Ohio 1984)); *see also ABA Code of Professional Responsibility*, DR 5–105 and EC 5–14 (prohibiting counsel from representing different plaintiffs with conflicting claims against the same defendant because it creates "the appearance of divided loyalties of counsel"). If the amount sought by each proposed class could exceed the total assets of the Defendants, then "competing claims may impair counsel's ability to vigorously pursue the interest of both classes." *Kuper* at 83; *see also Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y.2000) (finding counsel can represent two overlapping classes of plaintiffs as long as the class actions are waged against different defendants). Thus, if Cardinal Health and Syncor are now the same company, Schiffrin & Barroway does have a conflict of interest.

Here, Cardinal Health and Cardinal 414 appear to have a parent/subsidiary relationship. The Heitholt Plaintiffs are correct in asserting that subsidiary liability does not extend to a parent unless the subsidiary is "so dominated and controlled" by the parent "that it has no more than a paper existence." *AT & T Global Info. Solutions Co. v. Union Tank Car Co.*, 29 F.Supp.2d 857, 864 (S.D.Ohio 1998); *see also GenCorp, Inc. v.*

*Olin Corp.*, 390 F.3d 433, 447 (6th Cir.2004) (interpreting Ohio law to include a "corporate-law principal that, in the absence of a valid reason for piercing the corporate veil, a parent corporation is not liable for the acts of its subsidiaries"); *Starner v. Guardian Indus.*, 143 Ohio App.3d 461, 758 N.E.2d 270, 275 (Ohio Ct.App.2001) ("Generally, a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation."). The Heitholt Plaintiffs have proffered evidence to demonstrate that Cardinal 414 is a truly separate entity, e.g., the Merger Agreement's characterization of Syncor as a "surviving corporation" and a Certificate of Good Standing from the Ohio Secretary of State certifying Cardinal 414 as a foreign corporation properly registered in Ohio. The Court, however, is not entirely convinced that Cardinal 414 is truly separate in nature. Without additional evidence establishing Cardinal 414 as a legitimate subsidiary, the possibility exists that Schiffrin & Barroway would end up representing two classes of plaintiffs against, in essence, the same defendant.

Second, with some reluctance, the Court turns to Schiffrin & Barroway's apparent transgressions in *Moore v. Halliburton, Co.*, No. 3:02–CV–1152–M, 2004 WL 2092019, at *1 (N.D.Tex. Sept. 9, 2004). There, the court refused to approve a settlement agreement, in part, because of Schiffrin & Barroway's questionable tactics. The court explained that from February through April 2003, Schiffrin & Barroway commenced settlement negotiations with the defendant, Halliburton, without informing the lead plaintiff, the Archdiocese of Milwaukee Supporting Fund ("AMSF") that settlement discussions were ongoing.[7] *Id.* at *1. When AMSF challenged the fairness, reasonableness, and adequacy of the proposed settlement, the court held a fairness hearing and found the settlement's benefit to the plaintiffs wanting. The court found that Schiffrin & Barroway, by taking one of the lead plaintiffs out of the "decision-

---

6. The Merger Agreement also provided that Syncor would maintain its own ERISA plan, but that Cardinal Health shares would be substituted as the Syncor Plan's stock investment alternative.

7. The court explained that on December 6, 2002, Private Asset Management Group ("PAM"), Ga-

briel T. Forrest, Paul J. Benec, and the Archdiocese of Milwaukee Supporting Fund ("AMSF") were appointed lead plaintiffs. Schiffrin & Barroway were appointed lead counsel. *Halliburton*, 2004 WL 2092019 at *1.

making loop[,] deprived the class of the benefits of multiple Lead Plaintiffs." *Id.* at *6. The court continued as follows:

> The Court is dismayed that Lead Counsel here felt at liberty to exclude any of the Lead Plaintiffs from significant involvement in material activities in the case, which settlement surely is. No one can know how active involvement of AMSF in the negotiations might have affected the outcome of the negotiations.

*Id.* Moreover, the court expressed concern about the "vigor of Lead Counsel's settlement advocacy," noting that lead counsel supported a release that would have extinguished claims completely unrelated to the suit. The court also expressed suspicion because the $6 million proposed settlement, which was negotiated by Schiffrin & Barroway, would have guaranteed Schiffrin & Barroway approximately $1,500,000 in attorneys fees, leaving a net recovery of $3,000,000 for a class of 800,000 potential claimants.[8]

Although Schiffrin & Barroway explained that the matter stemmed from a disagreement about which firm was actually appointed lead counsel, the Court is not confident that the Heitholt Plaintiffs' proposed counsel will best be able to represent fairly and adequately the interests of all parties on their side.[9]

Accordingly, because of the possibility of an appearance of divided loyalties if Schiffrin & Barroway represented two classes of plaintiffs against Cardinal Health and Cardinal 414 and due to the difficulties the firm encountered in *Moore v. Halliburton, Co.,* the Court **DENIES** the Heitholt Plaintiffs' motion to appoint Lead Counsel.

### iii. The Kelly Group Plaintiffs: Squitieri & Fearon and Wechsler Harwood

■ Proposed counsel for the Kelly Group, Squitieri & Fearon and Wechsler

Harwood, do not appear as experienced in ERISA litigation as Schatz & Nobel and Stull, Stull & Brody. Although the Kelly Group's Proposed Counsel are extremely experienced in large litigation, particularly in securities, each firm's ERISA experience has been more limited than that found in the McKeehan Plaintiffs' proposed counsel's resumes. Additionally, the McKeehan Plaintiffs' proposed counsel have an established relationship.

The Kelly Group's formation of the Cardinal Health ERISA Litigation Steering Committee ("CHELSC"), a group aimed at ensuring Plaintiffs have a substantial role in the litigation, is impressive, but the Court finds the ERISA background of each candidate to be a more persuasive factor than the formation of a steering group.[10] Accordingly, the Court **DENIES** Daniel Kelly's Motion (on behalf of the Kelly Group) to Appoint Co–Lead Counsel and Liaison Counsel.

### iv. Salinas Plaintiffs: Barrett Johnston & Parsley and Whatley & Drake

The Salinas Plaintiffs' counsel have extremely impressive resumes. Barrett Johnston & Parsley has extensive securities class action experience and substantial labor union based ERISA experience. Whatley & Drake also has formidable complex litigation experience, including some major ERISA litigation. The McKeehan Plaintiffs' proposed counsel, however, maintain an edge because they have more experience litigating ERISA cases similar to the one sub judice. Thus, the Court **DENIES** Salinas and Jones Plaintiffs' Motion for Appointment of Co–Lead ERISA Plaintiffs, Co–Lead ERISA Counsel, and Liaison ERISA Counsel.

---

8. The court further noted that if all 800,000 claimants submitted claims, an investor with 100 shares would recover approximately 62 cents. *Id.* at *5; *see also* Gretchen Morgenson, *Judge Rejects Proposed Halliburton Settlement,* N.Y. Times, Sept. 11, 2004, at C2.

9. The Heitholt Plaintiff's argue that *Moore v. Halliburton, Corp.* was a securities action and, thus, inapposite to this ERISA action. When designating Lead Counsel, this Court is obligated to "consider any other matter pertinent to coun-

sel's ability to fairly and adequately represent the interests of the [putative] class." Fed.R.Civ.P. 23(g)(1)(c)(ii). Regardless of the legal theory underlying *Halliburton,* the Court finds the case pertinent to the matter at hand.

10. The Court also notes the hastiness with which the CHELSC Agreement appears to have been prepared. The Agreement was not dated, and Daniel Kelly was the only Plaintiff to sign it even though it purports to represent all six members of the Kelly Group.

### v.  Anderson Plaintiffs:
### Emerson Poynter

With regard to Emerson Poynter, the proposed counsel for Plaintiff Harry Anderson, the firm's securities litigation experience is substantial; however, the Court finds that other Lead Counsel candidates have superior ERISA experience.  The Court **DENIES** Plaintiff Harry B. Anderson's Motion to appoint Lead Counsel.

## III.  Duties of Counsel

The Court hereby designates Schatz and Nobel and Stull, Stull & Brody as Co–Lead counsel and Clark, Perdue, Roberts & Scott as Liaison Counsel.

The designated Co-lead Counsel shall have the following responsibilities:

- Sign any consolidated complaint, motions, briefs, discovery requests, objections, stipulations, or notices on behalf of the Plaintiffs for any matters arising during pretrial proceedings;

- Co-lead Counsel shall designate other firms of attorneys as necessary to serve as members of Plaintiffs' Steering Committee.  Members of the Steering Committee shall be available for conferences with Co-lead Counsel to consult and advise on strategy and, at the option of Co-lead Counsel, to participate in settlement negotiations.

- Chair and participate in meetings of the Steering Committee;

- Conduct all pretrial proceedings on behalf of Plaintiffs;

- Brief and argue motions;

- Initiate and conduct discovery consistent with the requirements of Fed. R.Civ.P. 26(b)(1), 26(2), and 26(g);

- Employ and consult with experts;

- Accept service on behalf of all Plaintiffs;

- Conduct settlement negotiations on behalf of Plaintiffs, but not enter binding agreements except to the extent expressly authorized;

- Call meetings on behalf of Plaintiffs' counsel;

- Distribute to all Plaintiffs' counsel copies of all notices, orders, and decisions of the Court;  maintain an up-to-date list of counsel available to all Plaintiffs' counsel on request;  keep a complete file of all papers and discovery materials filed or generated in the Consolidated ERISA Action, which shall be available to all Plaintiffs' counsel at reasonable hours.

- Perform such other duties as may be incidental to proper coordination of Plaintiffs' pretrial activities or authorized by further order of the court.

*Manual for Complex Litigation* § 40.22; *see also In re Worldcom, Inc. Erisa Litig.*, No. 02 Civ. 4816, 2002 WL 31599531, at *1 (S.D.N.Y. Nov. 18, 2002) (outlining responsibilities of lead counsel); *In re HealthSouth ERISA Litig.*, No. CV–03–BE–1700–S, at *1–2 (N.D.Ala. July 30, 2003) (providing lead counsel with a list of required duties).

All counsel in the Cardinal Health ERISA litigation shall keep contemporaneous time records and shall periodically submit summaries or other records of time and expenses to Lead Counsel as requested.

## V.  Conclusion

In accordance with this Order, the Court hereby does the following:

- **GRANTS** the McKeehan Plaintiffs' Motion For Appointment of Co–Lead Plaintiffs, Co–Lead Counsel, and Liaison Counsel.  [Docket No. 8, Case No. 04–643];

- **DENIES** the DeCarlo and Heitholt Plaintiffs' Motion for Appointment of Lead Plaintiffs, Co–Lead Counsel and Liaison Counsel;

- Docket No. 22, Case No. 04–643

- Docket No. 16, Case No. 04–668

- Docket No. 9, Case No. 04–684

- Docket No. 8, No. 04–722

- Docket No. 15, Case No. 04–725

- Docket No. 6, Case No. 04–736

- Docket No. 18, Case No. 04–745

- Docket No. 9, Case No. 04–746

- Docket No. 8, Case No. 04–778

- Docket No. 7, Case No. 04–789

- Docket No. 7, Case No. 04–790

- Docket No. 7, Case No. 04–803

**560**

- Docket No. 6, Case No. 04–815
- Docket No. 6, Case No. 04–828
- **DENIES** the Salinas and Jones Plaintiffs' Motion for Appointment of Co–Lead ERISA Plaintiffs, Co–Lead ERISA Counsel, and Liaison ERISA Counsel;
- Docket No. 24, Case No. 04–643
- Docket No. 18, Case No. 04–668
- Docket No. 11, Case No. 04–684
- Docket No. 10, No. 04–722
- Docket No. 17, Case No. 04–725
- Docket No. 12, Case No. 04–736
- Docket No. 7, Case No. 04–745
- Docket No. 15, Case No. 04–746
- Docket No. 11, Case No. 04–778
- Docket No. 10, Case No. 04–789
- Docket No. 10, Case No. 04–790
- Docket No. 6, Case No. 04–815
- Docket No. 10, Case No. 04–828
- **GRANTS** in part and **DENIES** in part Daniel Kelly's Motion (on behalf of the Kelly Group) to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 7, Case No. 04–746]; [11]
- **GRANTS** in part and **DENIES** in part Plaintiff Harry Anderson's Motion to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel. [Docket No. 9, Case No. 04–725].[12]

Additionally, the Motion by ERISA Plaintiffs Dan Salinas and Andrew Jones to Consolidate Cases [Docket No. 7, Case No. 745]

11. This motion was filed in each case brought by a member of the Kelly Group. Daniel Kelly's Motion and each of the following motions is **GRANTED** with regard to the parties' request for consolidation of the ERISA cases and **DENIED** with regard to a motion to appoint Lead Counsel:
- Motion by ERISA Plaintiff Vincent Palyan to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 5, Case No. 04–0778].
- Motion by ERISA Plaintiff Saul H. Cohen to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 4, Case No. 04–0789].
- Motion by ERISA Plaintiff Travis Black to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 4, Case No. 04–0790].

is **GRANTED** based on the Court's December 15, 2004 Order.

**IT IS SO ORDERED.**

- Motion by ERISA Plaintiff Susan Alston to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 2, Case No. 04–0815].
- Motion by ERISA Plaintiff Jennifer Brister to Consolidate Cases and Appoint Co–Lead Counsel and Liaison Counsel [Docket No. 2, Case No. 04–0828].

12. Plaintiff Anderson moved to consolidate the ERISA cases and appoint Lead Counsel in the same motion. Thus, the motion is **GRANTED** with respect to consolidation, pursuant to the Court's December 15, 2004 Order to Consolidate, but **DENIED** with regard to Lead Counsel appointment.