OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Saundra and James Wallace, appeal two decisions of the Belmont County Court of Common Pleas. The first decision granted summary judgment to Saundra's employer, Defendant-Appellee, Lionel Construction Company, on the Wallaces' employer intentional tort claim. The second decision granted summary judgment to Defendant-Appellee, Shelly and Sands, Inc., on the Wallaces' negligence claim.
 {¶ 2} The Wallaces first argue the trial court erred when granting summary judgment to Lionel, but to maintain an action against Saundra's employer, the Wallaces must prove, among other things, that Lionel knew that a dangerous condition existed within its business operation. The Wallaces cannot point to specific facts which demonstrate that Saundra was faced with a danger outside those incident to her employment. Accordingly, when viewing the evidence in the light most favorable to the Wallaces, the trial court properly granted summary judgment to Lionel.
 {¶ 3} The Wallaces also argue the trial court erred when granting summary judgment to Shelly Sands. But they have failed to point to specific facts demonstrating that Shelly Sands owed a duty to protect Saundra. Shelly Sands was not her employer and was not the general contractor on this job. Furthermore, the truck she fell from did not belong to Shelly Sands. Accordingly, when viewing the evidence in the light most favorable to the Wallaces, the trial court properly granted summary judgment to Shelly Sands.
 {¶ 4} For these reasons, the trial court's decisions granting summary judgment to each defendant are affirmed.
 Facts {¶ 5} In 1999, Saundra was employed by Shelly Sands to work on a road construction project in Belmont County, Ohio. While Saundra was working on that project, another contractor on the project, Lionel, needed a crew to prime and paint a bridge. Shelly Sands allowed four of their employees, including Saundra, to begin working for Lionel on this portion of the road construction project. Thus, these four people became employees of Lionel, a separate entity from Shelly Sands.
 {¶ 6} Part of the crew's job was to clean the bridge with a pressure washer. The pressure washer used water from a large tank located on the back of a truck. The crew would have to refill the tank from time to time, a task which took about thirty minutes. In order to refill the tank, someone would have to climb onto the tank, the top of which was about fifteen feet off the ground, and hold a hose into the tank while a co-worker attached the other end of the hose to a fire hydrant. There was nothing for the employee on top of the tank to hold onto and no bracket to hold the hose while the tank was being filled.
 {¶ 7} On the morning of September 8, 1999, the crew had to fill the tank before heading to the jobsite. Saundra, as the lightest and youngest member of the crew, climbed on top of the tank to hold the hose. When her supervisor, Tom Wood, arrived on the scene, Saundra was already on top of the tank, filling it up. After Wood arrived, another employee asked him to increase the water pressure so the tank would fill faster. Wood turned the wrench attached to the fire hydrant to increase the pressure. Soon after he did so, Saundra lost control of the hose due to the high water pressure. During a short, but unspecified length of time, Saundra screamed for Wood to decrease the pressure and attempted to keep the hose in the tank. But Wood claimed he did not hear her over the noise of water filling the tank and the hose banging inside the tank. The hose came out of the tank and knocked Saundra off of it. She fell to the ground and sustained serious injuries.
 {¶ 8} Saundra and her husband, James, subsequently filed a complaint against both Lionel and Shelly Sands. She claimed that Lionel committed an employer intentional tort and that Shelly Sands, as general contractor and owner of the truck, was negligent. Each defendant answered and, after discovery, moved for summary judgment.
 {¶ 9} In its motion for summary judgment, Lionel argued that it should be granted summary judgment since the Wallaces could not demonstrate a genuine issue of material fact regarding whether Lionel knew of a dangerous condition or process, whether Lionel knew with substantial certainty that Saundra would be injured due to the dangerous condition or process, and whether Lionel required her to perform the dangerous task. Shelly Sands argued in its motion that it was not the general contractor for this project, that it did not own the truck which Saundra fell from, and that it and Lionel are separate entities. The defendants relied on Saundra's deposition, Wood's deposition, the deposition of Jeff Burson, Shelly Sands' foreman on the project, and two affidavits.
 {¶ 10} The Wallaces did not offer additional evidence when they responded to the defendants' motions for summary judgment. Instead, they argued that the evidence the defendants' introduced demonstrated a genuine issue of material fact on each element of their claims against these defendants.
 {¶ 11} The trial court granted summary judgment to each of the defendants. It concluded that the Wallaces failed to demonstrate either that Lionel knew of the exact dangers which ultimately caused Saundra's injuries or that it knew with substantial certainty that she would be injured. It further concluded that the Wallaces failed to demonstrate that Shelly Sands actively participated in the activity which caused Saundra's injuries.
 Standard of Review {¶ 12} In their assignments of error, the Wallaces claim the trial court erred in granting summary judgment to both Lionel and Shelly 
Sands. When reviewing a trial court's decision to grant summary judgment, this court applies the same standard as the trial court and, therefore, engages in a de novo review. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 13} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. "In order to overcome an employer-defendant's motion for summary judgment on an intentional tort claim, the plaintiff must set forth specific facts showing there is a genuine issue as to whether the employer committed an intentional tort." Burgos v. Areway,Inc. (1996), 114 Ohio App.3d 380, 383.
 Lionel's Liability {¶ 14} In the first of two assignments of error, the Wallaces argue:
 {¶ 15} "The trial court erred by granting summary judgment in favor of Defendant Lionel Construction Company dismissing the intentional tort claim of Plaintiffs Appellants."
 {¶ 16} The Wallaces claim that they should be able to recover against Saundra's employer, Lionel, since it intentionally injured her. While Ohio's workers' compensation provisions provide employees with the primary means of compensation for injury suffered in the scope of employment, an employee may institute a tort action against the employer when the employer's conduct is sufficiently "egregious" to constitute an intentional tort. Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. When an employer's conduct is sufficiently egregious to constitute an intentional tort, the employer's act occurs outside the scope of employment and, thus, the employee's recovery is not limited to the workers' compensation provisions. Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 613, footnote 7. In order to recover against an employer for an intentional tort, an employee must prove the three elements the Ohio Supreme Court described in Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115.
 {¶ 17} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
 {¶ 18} The primary concern in any case where an employee is claiming his employer committed an intentional tort against him is whether the employer, "through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171,2002-Ohio-2008, ¶ 27.
 {¶ 19} In this case, the Wallaces argue there is a genuine issue of material fact on each of the three prongs of the Fyffe test. In contrast, Lionel argues there is no genuine issue of material fact on any of the three prongs. "[I]f the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate. Hunter v. Interpak,Inc., 11th Dist. No. 2001-L-198, 2002-Ohio-7149, ¶ 14. We conclude that the Wallaces have failed to prove the first of Fyffe's three prongs, so we will not address those other prongs.
 Dangerous Condition {¶ 20} The Wallaces argue there is a genuine issue of material fact regarding whether it was dangerous to fill this water tank when the water pressure is high since there was nothing for Saundra to hold onto when on top of the tank and no bracket designed to hold the hose in place while the tank was being filled. They contend that Lionel, through Wood, knew the condition was dangerous after Wood increased the water pressure.
 {¶ 21} In response, Lionel argues there are no facts which indicate that it knew of a dangerous process. According to Lionel, the testimony demonstrates that the task Saundra was performing "was one of the most routine, least dangerous jobs imaginable in highway construction." It contends that there is no evidence of prior injury and that Saundra testified that she did not expect to be injured. It argues that this court cannot find a genuine issue of material fact on this issue without some evidence that this task "was any more dangerous than any other procedure performed by a highway construction worker."
 {¶ 22} In order to satisfy the first prong of the Fyffe test, the plaintiff must show there was a dangerous process and the employer had actual knowledge of the consequences of the exact dangers which ultimately caused the injury. Gibson at ¶ 28; Sanek v. Duracote Corp.
(1989), 43 Ohio St.3d 169, 172; Dailey v. Eaton Corp.,138 Ohio App.3d 575, 582, 2000-Ohio-1754. "[D]angerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach.'" Dailey at 582, quoting Naragon v. DaytonPower Light Co. (Mar. 30, 1998), 3rd Dist. No. 17-97-21. Injuries that occur in the scope of employment are, by definition, not intentional torts. Id.
 {¶ 23} The mere fact that defendant's process involved the existence of dangers does not automatically classify defendant's acts or omissions as an intentional tort, even if management failed to take corrective actions or institute safety measures. Shelton v. U.S. Steel. Corp.
(S.D.Ohio, 1989), 710 F.Supp. 206, 210. Some dangers may "fairly be viewed as a fact of life of industrial employment" and an employer has not committed an intentional tort when an employee is injured by one of those dangers. Van Fossen v. Babcock Wilcox Co. (1989),36 Ohio St.3d 100, 116. A dangerous condition exists when the danger "falls outside the `natural hazards of employment,' which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures." Youngbird v. Whirlpool Corp. (1994),99 Ohio App.3d 740, 747.
 {¶ 24} "[M]any employment situations involve obvious dangers incident to employment and that the purpose of the Workers' Compensation Act is to provide an employee with compensation for injury suffered by reason of a danger necessarily incident to his employment. An intentional tort action, conversely, allows an employee to recover for injuries suffered that are not caused by a danger necessarily incident to his employment. For example, operating dangerous machinery may be a necessary incident of an employment situation, but operating that dangerous machinery without proper safety mechanisms may not constitute a necessary incident of the employment. See Fyffe. In the former case, recovery likely could be had under the Workers' Compensation Act. In the latter case, recovery may be possible under the theory that the employer's conduct in failing to provide adequate safety mechanisms constituted an intentional tort."Goodin v. Columbia Gas of Ohio, Inc. (2000), 141 Ohio App.3d 207, 216.
 {¶ 25} Thus, the scope of our inquiry must focus on whether the Wallaces have presented evidence from which it might be found that this was an injury associated with inherently dangerous work outside the scope of Saundra's employment and Lionel had knowledge that the work was dangerous. Dailey at 582; Moebius v. Gen. Motors Corp., 2nd Dist. No. 19147, 2002-Ohio-3918, ¶ 29; Long v. International Wire Group, Inc., 3rd Dist. No. 3-2000-11, 2000-Ohio-1751.
 {¶ 26} The Wallaces claim that Saundra faced a danger outside those incident to her employment when the water pressure was increased. But their argument in this regard is flawed. Each employee testified that filling up the water tank was one of Saundra's normal job activities. The water tanks are filled by hoses connected to a fire hydrant. Depending on how far the hydrant is opened, the water pressure through the hose may vary. Thus, a danger inherent to this task is that the water pressure may be high. The fact that the possibility became an actuality does not mean that Saundra was suddenly faced with a danger which was not inherent to her job. Thus, the Wallaces' argument that the increase in water pressure constituted a danger which was not incident to her employment is meritless.
 {¶ 27} The Wallaces next argue that there is a genuine issue of material fact regarding whether Saundra was faced with dangers outside those incident to her employment since Lionel did not provide proper safety devices. Saundra testified that she believed there should have been either a bracket to hold the hose or something for her to hold onto while filling the tank. According to Saundra, she believed this after she asked Glenn Dodd, an employee of Shelly Sands, why the tanks did not have a bracket to hold the hose. He told her that there was supposed to be one. The Wallaces have not presented any other evidence supporting this argument.
 {¶ 28} This evidence does not demonstrate a genuine issue of material fact regarding whether Lionel knew that the lack of certain safety devices constituted a dangerous condition. There is no evidence in the record that the types of safety devices the Wallaces claim should have been on the vehicle were available. For example, the Wallaces argue there should have been a rail, handhold, or other hand guard on top of the tank for Saundra to hold onto. But there is no evidence in the record that such a device existed or that it was possible for Lionel to install such a device on the water tank. Likewise, Saundra testified that a Shelly 
Sands employee stated that there should be a bracket on the tank, but there is no indication that this person was qualified to make such a statement. The Wallaces are asking us to speculate about the availability and efficacy of the safety devices to find a genuine issue of material fact on this issue.
 {¶ 29} Without some evidence that Lionel knew it could have taken one of the measures advocated by the Wallaces, there is no indication that the lack of these devices made the task of filling up the water tank more dangerous. Thus, there is no indication in the record that Lionel knew that filling up the water tank without these devices faced Saundra with dangers outside those incident to her employment.
 {¶ 30} In order to do her job, Saundra had to straddle a water tank about fifteen feet above the ground while holding a hose connected to a fire hydrant. She was always faced with the danger of falling if she lost control of the hose because the water pressure was turned on too high. This danger she faced was incident to her employment. Therefore, there is not a genuine issue of material fact regarding the first element of theFyffe test. Because failure to meet this first prong is fatal to the Wallaces' intentional tort claim, we need not address their arguments on the remaining two prongs of Fyffe. Hunter at ¶ 19. The trial court properly granted summary judgment to Lionel. The Wallaces' first assignment of error is meritless.
 Shelly Sands's Liability {¶ 31} In their second assignment of error, the Wallaces argue:
 {¶ 32} "The trial court erred by granting summary judgment in favor of Defendant Shelly and Sands, Inc. dismissing the negligence claims of Plaintiffs-Appellants."
 {¶ 33} Here, the Wallaces claim that the trial court erred by granting summary judgment to Shelly Sands since it was the general contractor on the job and actively participated in how Lionel, the subcontractor, performed its job. According to the Wallaces, the relationship between Shelly Sand and Lionel is ambiguous since the two companies have shared employees with one another both at this jobsite and in the past. They contend that it is "difficult to ascertain where the scope of Shelly and Sand's involvement in the project ended and that of Lionel began." Thus, the Wallaces believe there is a genuine issue of material fact regarding whether Shelly Sands actively participated in the job.
 {¶ 34} Shelly Sands's argument on appeal is fourfold. First, it argues that the relationship between it and Lionel is not ambiguous. According to Shelly Sands, it and Lionel are separate entities and the actions of Lionel's employees cannot be imputed to Shelly and Sands. Second, it claims the evidence conclusively demonstrates that Lionel owned the truck and that Saundra's statements to the contrary are mere speculation and insufficient to establish a genuine issue of material fact for the purposes of summary judgment. Third, it contends that it owed no duty to Saundra since it was not the general contractor on this job. Finally, Shelly and Sands argues that it owed no duty to Saundra even if it were the general contractor since it did not actively participate in this aspect of the overall project; it contends that its employees did not direct Lionel's employees' actions.
 {¶ 35} As the Ohio Supreme Court recently reaffirmed, a general contractor ordinarily has no duty to protect a subcontractor's employees from the known and appreciated dangers of the work to be performed.Sopkovich v. Ohio Edison Co., 81 Ohio St.3d 628, 636-637, 1998-Ohio-0341, citing Wellman v. E. Ohio Gas Co. (1953), 160 Ohio St. 103, paragraphs one and two of the syllabus. But in Hirschbach v. CincinnatiGas Elec. Co. (1983), 6 Ohio St.3d 206, the Ohio Supreme Court recognized an exception to the general rule. "One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Id. at syllabus. Likewise, "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." Cafferkey v. TurnerConstr. Co. (1986), 21 Ohio St.3d 110, syllabus. For the purposes of general contractor liability, "'actively participated' means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." Bond v. Howard Corp., 72 Ohio St.3d 332, 1995-Ohio-0081, syllabus.
 {¶ 36} Shelly Sands argues the exception to Wellman's rule of a general contractor's non-liability does not apply to it since it was not the general contractor for the project. In support of this argument, Shelly Sands points to an affidavit it filed with its motion for summary judgment. In that affidavit, Danielle St. Clair, Shelly 
Sands's safety director, swore that the general contractor for this project was "Tri-State Asphalt, a subsidiary of Shelly and Sands." This is consistent with the only other evidence presented on the issue. In Burson's deposition, he testified that he was not sure who was the general contractor on the project. "It was either [Shelly Sands] or Tri-State, but I can't remember."
 {¶ 37} Given this evidence, Shelly Sands's argument is correct. "Generally, a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation." Starner v. Guardian Industries (2001), 143 Ohio App.3d 461,468; Natl. City Bank v. The Plechaty Cos. (1995), 104 Ohio App.3d 109,115. This is because a corporation is a legal entity, apart from those who compose it. Belvedere Condominium Unit Owners' Assn. v. R.E. RoarkCos., Inc., 67 Ohio St.3d 274, 287, 1993-Ohio-0119. But the corporate entity may be disregarded and a parent corporation and its subsidiary may be treated as a single entity under certain circumstances. Starner at 468-469. In Belvedere, the Ohio Supreme Court set out a three-pronged test to determine whether the corporate form should be disregarded.
 {¶ 38} "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at paragraph three of the syllabus.
 {¶ 39} "Piercing the corporate veil is not a claim, it is a remedy encompassed within a claim." Geier v. National GG Industries, Inc. (Dec. 23, 1999), 11th Dist. No. 98-L-172. Thus, the party seeking to have the corporate form disregarded bears the same burden of proof on this issue as they do on the rest of their claim. Starner at 469; Univ. Circle Ctr.Corp. v. Galbreath Co. (1995), 106 Ohio App.3d 835, 840.
 {¶ 40} In this case, Shelly Sands provided evidence in their motion for summary judgment that its subsidiary was actually the general contractor on this project. The Wallaces have not provided any evidence in response to demonstrate a general issue of material fact on this issue.
 {¶ 41} The same situation arose in Ohio City Orthopedics, Inc. v.Medical Billing And Receivables, Inc., 8th Dist. No. 81930, 2003-Ohio-1881. In that case, the plaintiff was pursuing a claim against a corporate defendant and that company's sole shareholder. The individual shareholder moved for summary judgment and the trial court granted that motion, finding that the individual defendant was immune from corporate liability and that the plaintiff had not produced evidence sufficient to pierce the corporate veil. Id. at ¶ 5. On appeal, the plaintiff argued that the trial court erred in granting summary judgment to the individual defendant since, as the party moving for summary judgment, she bore the burden of establishing no genuine issue of material fact regarding her individual liability. The plaintiff claimed that the trial court could not grant summary judgment to the individual defendant since she did not prove that the corporate veil could not be pierced. Id. at ¶ 11. The Eighth District disagreed. It noted that the plaintiff bore the burden of proving that the corporate form should be disregarded.
 {¶ 42} "In her motion for summary judgment, Stafford demonstrated that the contracts at issue were not signed by her, either in her individual capacity or on behalf of Medical Billing. Rather, as admitted by Patricia Cunningham, appellant's office manager, the contracts were signed by John Paxson, on behalf of Medical Billing. Thus, Stafford adequately demonstrated that there was no genuine issue of material fact that she did not intend to be personally liable on the contracts.
 {¶ 43} "Appellant then had the burden of producing evidence to create a genuine issue of material fact regarding whether Stafford maintained such control over Medical Billing that it was merely her alter ego so as to allow piercing the corporate veil to hold her individually liable.
 {¶ 44} "In its brief in opposition to appellees' motion for summary judgment, appellant argued that Stafford's failure to produce evidence that corporate formalities were followed and that a corporate identity was maintained separate from her personal dealings were `glaring omissions' from which `reasonable minds could certainly conclude that Stafford was the alter ego of the entity known as Medical Billing.' Appellant argued further that because `there is nothing in the record to suggest the entity existed separate and apart from Stafford who created it,' it was `therefore readily apparent that Medical Billing had no "free will" of its own.'
 {¶ 45} "Appellant's mere assertions, however, are insufficient to create a genuine issue of material fact. Appellant set forth no evidence demonstrating that Stafford was so intertwined with Medical Billing so as to make it her alter ego. Contrary to appellant's argument, the mere fact that Stafford is the sole shareholder and officer of the corporation is not sufficient evidence to demonstrate that she had `absolute, complete and final authority' over Medical Billing such that the corporate veil should be pierced. Something more must be shown.
 {¶ 46} "* * *
 {¶ 47} "Because appellant failed to meet the test set forth in Belvedere, the trial court properly granted summary judgment in favor of Stafford." Id. at ¶ 13-16, 19.
 {¶ 48} In this case, as in Ohio City Orthopedics, the defendant has produced evidence showing that it is not the party responsible for the alleged wrongdoing against the plaintiff. As in Ohio City Orthopedics,
the plaintiff in this case has failed to point to any evidence demonstrating that there is a genuine issue of material fact regarding whether the corporate form should be disregarded. Thus, we must conclude the trial court properly granted summary judgment to the defendant on the issue of general contractor liability. The Wallaces' arguments to the contrary are meritless.
 {¶ 49} The Wallaces attempt to get around this by making two arguments: 1) that Shelly Sands owned the truck and 2) that the relationship between Shelly Sands and Lionel is ambiguous. Both of these arguments are also meritless.
 {¶ 50} There is no question that Shelly Sands did not own the truck involved in this case. In her deposition, Saundra testified that she believed that Shelly Sands owned the truck, but she later admitted that she was not sure who owned the truck. In contrast, both of the other witnesses who were deposed testified that they knew the truck belonged to Lionel. Furthermore, in her affidavit, St. Clair stated that Shelly 
Sands did not own the vehicle in question and did not lease, sell, loan, deliver, provide or otherwise bail the truck to Lionel. Scott McDonald, Lionel's COO and Vice President, echoed this in his own affidavit, while also averring that Lionel actually owned the truck in question. McDonald attached the truck's title history, showing Shelly Sands never owned the truck. Thus, the trial court properly granted summary judgment to Shelly Sands on this issue as well.
 {¶ 51} There is also no genuine issue of material fact regarding the relationship between Lionel and Shelly Sands. As the Wallaces point out, Wood testified that "Shelly and Sands people goes and works for Lionel sometimes." But this is the result of the itinerate nature of the job, rather than an ongoing relationship between Lionel and Shelly 
Sands. Wood and Burson each testified that they were laid off by their employer at the end of each road construction season. Furthermore, both St. Clair and McDonald swore that Lionel is a separate business from Shelly Sands and not a part of Shelly Sands. Finally, Saundra testified that her employer at the time of the accident was Lionel and she filed her workers' compensation claim against Lionel. There is not a genuine issue of material fact regarding the relationship between Lionel and Shelly Sands.
 {¶ 52} The Wallaces try to hold Shelly Sands liable for their injuries because it was the general contractor on site and it actively participated in Lionel's portion of the overall project. But Shelly 
Sands is a separate entity from Lionel and was not the general contractor on the project. Furthermore, the truck in question never belonged to Shelly Sands. The trial court properly granted summary judgment to Shelly Sands. The Wallaces' second assignment of error is meritless.
 {¶ 53} In conclusion, when viewing the evidence in the light most favorable to the Wallaces, their claim against Lionel fails because Lionel was not aware of a dangerous condition. The Wallaces cannot point to specific facts demonstrating that Saundra was faced with a danger outside that incident to her employment. Likewise, when viewing the evidence in the light most favorable to the Wallaces, their claim against Shelly Sands also fails. The evidence demonstrates that the truck Saundra fell from did not belong to Shelly Sands, that it was a separate entity from Lionel, and that it was not the general contractor on this project. Thus, Shelly Sands owed no duty to Saundra and the trial court properly granted summary judgment in its favor. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.