OPINION
{¶ 1} Appellant, David Rice, appeals the judgment of the Chardon Municipal Court holding him personally accountable for the liability of defendant Aloha Sports, Inc., a company of which appellant was the majority shareholder.
 {¶ 2} On June 24, 2003, appellee, Music Express, filed a complaint against Aloha Sports, Inc., Alan Brown, and appellant asserting they breached a business agreement with Music Express. On November 21, 2003, appellee voluntarily dismissed Alan Brown. On January 27, 2004, appellee filed its First Amended Complaint against defendants Aloha Sports, Inc., and appellant asserting breach of contract. Appellee also contended that appellant so dominated and controlled Aloha Sports, Inc., that the corporation was appellant's "alter ego," thereby asserting its intent to "pierce the corporate veil."
 {¶ 3} On April 24, 2004, trial was held before the magistrate. On July 7, 2004, the magistrate issued his findings of fact and conclusions of law. The magistrate concluded that both Aloha Sports, Inc., and appellant would be held individually, jointly, and severally liable in the amount of $14,833.17 plus interest and costs. On July 21, 2004, appellant objected to the magistrate's findings of fact and conclusions of law; however, appellant failed to file a transcript or affidavit in support of his factual objections pursuant to Civ.R. 53(E)(3)(b). On August 12, 2004, the trial court adopted the magistrate's findings and conclusions. This appeal followed.
 {¶ 4} Appellant asserts the following assignments of error for our consideration:
 {¶ 5} "[1.] The trial court erred to the prejudice of defendant-appellant in piercing the corporate veil, and finding defendant liable.
 {¶ 6} "[2.] The trial court erred to the prejudice of defendant-appellant in finding that Plaintiff satisfied Prong 1 of the `Belvedere' test.
 {¶ 7} "[3.] The trial court erred to the prejudice of defendant-appellant in finding that Plaintiff satisfied Prong 3 of the `Belvedere' test."
 {¶ 8} Appellant's three assigned errors relate, in sum, to the tripartite test set forth by the Supreme Court of Ohio in BelvedereCondominium Unit Owners' Assn. v. R.E. Roark Companies, Inc.,67 Ohio St.3d 274, 1993-Ohio-119. For sake of continuity, therefore, we shall address them together.
 {¶ 9} Before addressing the merits of appellant's contentions, we must address a procedural concern alluded to above: Civ.R. 53(E)(3)(c) provides that "any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if the transcript is not available." The objecting party bears the burden of submitting a transcript or affidavit to the trial court. Walther v. Newsome, 11th Dist. No. 2002-P00019, 2003-Ohio-4723, at ¶ 20.
 {¶ 10} Here, appellant filed objections to the magistrate's decision; the objections were both factual and legal in nature. However, the record includes neither a transcript of the proceedings nor a suitable substitute which would permit review of the evidence heard by the magistrate. Where an objecting party fails to provide the evidentiary statements contemplated by Civ.R. 53(E)(3)(c), she may not argue issues of fact on appeal. Id. Rather, "an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion." State ex rel. Duncan v. Chippewa Township Trustees,73 Ohio St.3d 728, 730, 1995-Ohio-272. An abuse of discretion involves more than an error of law; it suggests the court's attitude was unreasonable, arbitrary, or unconscionable. State ex rel. Edwards v.Toledo City School Dist. Bd. of Edn., 72 Ohio St.3d 106, 107,1995-Ohio-251.
 {¶ 11} With this in mind, the trial court's adoption of the magistrate's decision hinges on whether the magistrate properly applied the test set forth in Belvedere, supra. To the extent that the lower court did not act arbitrarily or unreasonably in its adoption of the magistrate's analysis, we will not disturb its judgment.
 {¶ 12} In Belvedere, the Supreme Court stated that a corporate form may be disregarded and its shareholders held liable for the wrongs of the corporation when:
 {¶ 13} "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control or wrong." Id. at paragraph three of the syllabus.
 {¶ 14} The first element provides a succinct statement of the alter ego doctrine. Id. at 288. To succeed, a claimant must demonstrate that the individual shareholder and the corporation are fundamentally indistinguishable. Id. With respect to this prong, appellant contends that the evidence adduced at the hearing demonstrated that persons other than appellant exercised management and decision-making authority. Hence, the magistrate erred in concluding that Aloha Sports, Inc. was merely appellant's alter ego.
 {¶ 15} Appellant's argument entreats us to weigh the evidence submitted at the hearing regarding the amount of control appellant exercised over the company in question. As we have no transcript or affidavit providing a statement of the evidence, we cannot assess the specific merit of this argument.
 {¶ 16} That said, we must emphasize that Belvedere does not preclude non-parties to the litigation from exercising managerial or decision-making authority. Rather, the alter ego element of Belvedere
requires a demonstration of control that would indicate the corporation has no "separate mind, will, or existence of its own." A corporation may still be functionally "indistinguishable" from its shareholder(s) even where the shareholder(s) delegate certain managerial or operative decision making authority to other individuals. Thus, appellant's argument is neither logically nor conceptually inconsistent with a finding that Aloha Sports, Inc., was his alter ego. This argument, manifest in appellant's second assigned error, is overruled.
 {¶ 17} The second element of Belvedere requires the claimant to demonstrate the control by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to pierce the corporate shield. Appellant contends the record fails to disclose any evidence of fraud or dishonesty and hence the magistrate erred when he so found. Appellant further argues that the magistrate relied upon illegitimate or non-binding authority to reach its conclusion.
 {¶ 18} Again, appellant's contentions regarding the magistrate's findings of fraud and/or dishonesty rely on evidence from the hearing to which we have no access; therefore, in this respect, appellant's argument must fail.
 {¶ 19} This conclusion notwithstanding, appellant argues that the magistrate's citation and use of two cases, Bucyrus-Erie Co. v. GeneralProducts Corp. (C.A. 6, 1982), 643 F.2d 413 and E.S. Preston Assoc.,Inc. v. Preston (1986), 24 Ohio St.3d 7, illustrate his attempt to ignore the controlling precedent of Belvedere. We disagree.
 {¶ 20} The test set forth in Belvedere is open-ended and versatile, i.e., it permits and encourages flexibility by its very definition. WhileBelvedere sets forth the formal test in Ohio for veil-piercing, the legal conception has historical antecedents in both federal and state law. Such cases may provide sound analogies or insightful analyses relating to the formal test set forth in Belvedere without usurping its authority. We believe the cases cited by the magistrate were supplementary in nature and do not function to undermine Belvedere.
 {¶ 21} Specifically, the magistrate begins his analysis with the recognition that Belvedere is the controlling authority in Ohio for piercing the corporate veil. During his analysis of the second prong ofBelvedere, the magistrate states:
 {¶ 22} "The second prong of the Belvedere test required that Mr. Rice's domination and control was used to commit fraud or wrong or other dishonest or unjust acts. While not contolling law, the Court notes that the United States Sixth Circuit Court of Appeals has specifically held that fraud, as an element of this test is not `essential'. [sic] Rather, corporate fiction [sic] would be disregarded when its retention would produce injustice or inequitable consequences. Bucyrus-Erie Co. v. GenProd (C.A. 6, 1981), 643 F.2d 413. [sic.] Although the Supreme Court of Ohio has not expressly addressed this issue, it appears to agree that the perpetration of a fraud or illegality is not the sole ground for disregarding the corporate entity. LeRoux at 422; E.S. Preston Assoc.Inc. v. Preston, 24 Ohio St.3d 7, 11 (1986). [sic.]"
 {¶ 23} We do not see how the magistrate's allusion to the above cases implies an infidelity to Belvedere. To wit, the magistrate's citation toBucyrus-Erie indicates that the corporate shield may evaporate when its retention would produce "injustice" or "inequitable" consequences. AsBelvedere explicitly notes, the fraud or illegality alleged must produce an injury or unjust loss. The magistrate's statement essentially reiterates Belvedere's third prong. The magistrate also noted that fraud is non-essential for piercing the corporate veil. Again, we agree: The second prong of Belvedere is disjunctive and requires proof of fraud or
illegality. Fraud therefore is not sine qua non for disregarding the corporate structure.
 {¶ 24} Further, the court in Belvedere cites to Bucyrus-Erie as providing the inspiration for its holding. In Belvedere, the court stated:
 {¶ 25} "In Bucyrus-Erie, the Sixth Circuit applied Ohio law in reviewing jury instructions in a veil-piercing case. It held that the corporate form may be disregarded when `(1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.' [Bucyrus-Erie, at 418.]"Belvedere, at 288.
 {¶ 26} The court continued:
 {¶ 27} "We feel the Sixth Circuit's approach to piercing the corporate veil strikes the correct balance between the principle of limited shareholder liability and the reality that the corporate fiction is sometimes used by shareholders to protect themselves from liability for their own misdeeds." Belvedere, at 289.
 {¶ 28} While the Belvedere test omits the equitable concepts of dishonesty and injustice from its formulation, the spirit of the test does not obviate their recognition. For these reasons, we do not think the magistrate's use of or reference to Bucyrus-Erie was improper.
 {¶ 29} Moreover, in Preston, supra, the Supreme Court of Ohio emphasized:
 {¶ 30} "Courts have been reluctant to disregard the corporate entity and have done so only where the corporation has been used as a cloak for fraud or illegality or where the sole owner has exercised such excessive control over the corporation that it no longer has a separate existence. * * * It has also been stated that the corporate entity should be disregarded only when justice cannot be served in any other way. * * *" [citations omitted]. Id at 12.
 {¶ 31} While released some seven years prior to Belvedere, we do not believe the law announced in Preston is inconsistent with the controlling authority set forth in Belvedere.
 {¶ 32} We do not believe the magistrate redefined or restructuredBelvedere by referencing either Bucyrus-Erie or Preston. While factually dissimilar and not "controlling," the above cases are in no way inconsistent with Belvedere. As far as we can discern, the magistrate used these cases to inform the discussion as to what, in fact, might constitute problematic conduct as it pertains to the veil piercing exercise in Belvedere. This interpretation is bolstered by the findings the magistrate made immediately following his discussion of the non-controlling cases at issue:
 {¶ 33} "In this case, Mr. Rice clearly benefited from trades made with customers of plaintiff's stations, deposited funds in his personal account without proper accounting, misrepresented Aloha's ability to perform the terms of the contract entered into with plaintiff, and ceased operations without notice to plaintiff.
 {¶ 34} Assuming these findings correspond to the evidence adduced at the hearing, they are adequate to meet the illegality test internal toBelvedere's second prong.
 {¶ 35} In sum, we do not believe the magistrate's use of these cases runs afoul of Belvedere. Appellant's assigned error relating toBelvedere's second prong is overruled.
 {¶ 36} The final element of Belvedere is causal in nature; that is, it requires the claimant to demonstrate a causal connection between the shareholder's control of the corporation and the alleged injury or loss. Appellant argues that no evidence was offered indicating appellee was injured as a result of appellant's control over Aloha Sports, Inc.
 {¶ 37} We must reiterate, one final time, appellant's challenge is tied intimately to the evidence presented at the hearing. Without a transcript, we are unable to consider appellant's argument. Appellant's final assigned error is accordingly overruled.
 {¶ 38} In sum, we do not believe the trial court abused its discretion in adopting the magistrate's decision. The magistrate set forth the relevant legal authority and properly applied it to the case before it. Thus, appellant's three assignments of error are overruled.
 {¶ 39} For the above reasons, the decision of the Chardon Municipal Court is hereby affirmed.
Ford, P.J., Grendell, J., concur.