{¶ 53} Mr. Minno suffered terrible injuries as the result of his accident. It is natural to be sympathetic toward him. A jury has yet to decide to what extent, if any, See-Ann is liable to Mr. Minno for his injuries. However, this does not allow us, as a court, to misapply theBelvedere test in order to find Pro-Fab "fundamentally *Page 18 
indistinguishable" from See-Ann, a separate corporate entity and Minno's employer, when both the facts and the applicable law make it clear that Belvedere does not apply. Moreover, even if we were to assume, arguendo, the Belvedere test was applicable, Minno has failed to establish a prima facie showing that all of the elements of the test were satisfied. Summary judgment was properly granted in this case. Accordingly, I respectfully dissent.
 {¶ 54} The evidence is undisputed that Pro-Fab and See-Ann are separately incorporated entities, and that Minno was employed by See-Ann, and not Pro-Fab, at the time his accident occurred. This court has held that, "[p]iercing the corporate veil is not a claim, [but] a remedy encompassed within a claim." Geier v. Natl. GG Industries,Inc. (Dec. 23, 1999), 11th Dist. No. 98-L-172, 1999 Ohio App. LEXIS 6263, at *10. However, that is precisely what Minno has attempted to do by arguing that the "corporate veil" of See-Ann should be pierced, i.e., he is attempting to state a claim against Pro-Fab, an undisputedly separate legal entity.
 {¶ 55} "Ohio Courts have treated the separate legal personality of a corporation as the norm and it remains clear that disregarding this normis the exception and not the rule." Clinical Components, Inc. v. LefflerIndustries, Inc. (Jan 22, 1997), 9th Dist. No. 95CA0085, 1997 Ohio App. LEXIS 199, at *6 (citations omitted) (emphasis added). "This is because a corporation is a legal entity, apart from those who compose it."Wallace v. Shelly and Sands, Inc., 7th Dist. No. 04 BE 11,2005-Ohio-1345, at ¶ 37 (citation omitted).
 {¶ 56} "One of the purposes of incorporation is to limit the liability of individual shareholders. * * * Thus, the burden of proof is upon theparty seeking to impose liability *Page 19 
on the shareholder or shareholders to demonstrate that one of the grounds for piercing the corporate veil exists." LeRoux's Billyle SupperClub v. DVJ's Plumbing (1991), 77 Ohio App. 3d 417, 423 (emphasis added). Mr. Minno, as the party seeking to impose liability in this case, bears the burden of proof.
 {¶ 57} As the majority correctly notes, these grounds are set forth in the case of Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.Inc., 67 Ohio St.3d 274, 1993-Ohio-119.
 {¶ 58} In Belvedere, the Supreme Court of Ohio held that "[t]he corporate form may be disregarded, and individual shareholders heldliable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against a person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at 289 (emphasis added)' accord Bucyrus-Erie Co. v. General Prods. Corp. (C.A.6, 1981),643 F.2d 413, 418. Consistent with the structure of this test, there must be evidence to show that all three elements are satisfied before the corporate veil may be pierced. Belvedere, 67 Ohio St.3d at 289.
 {¶ 59} As is evident from the foregoing, the Belvedere test contemplates piercing the corporate veil to hold shareholders liable for corporate misdeeds, and only when manifest injustice results from the corporation's actions. See Music Express Broadcasting Corp. v. AlohaSports, Inc. (11th Dist.), 161 Ohio App.3d 737, 2005-Ohio-3401, at ¶ 29 ("Courts have been reluctant to disregard the corporate entity and have *Page 20 
done so only where the corporation has been used as a cloak for fraud or illegality, or where the sole owner has exercised such excessivecontrol over the corporation that it no longer has a separate existence. * * * It has also been stated that the corporate entity should be disregarded only when justice cannot be served in any other way.")
(citation omitted) (emphasis added).
 {¶ 60} Here, the majority acknowledges that "Mr. Minno does not seek to hold the individual shareholders [Mr. Townsend and Ms. Myers] personally liable." It nevertheless concludes that "whether one is attempting to pierce the corporate veil by holding individual shareholders liable or by holding a related company liable under alter-ego principles is a distinction without a difference." I disagree.
 {¶ 61} While it is tempting to accept the majority's dictum at face value, its statement fails to acknowledge the very real distinction between a sister corporation and a parent corporation.
 {¶ 62} Based upon the undisputed evidence presented on summary judgment, reasonable minds can only conclude that Pro-Fab and See-Ann were sister corporations. A sister corporation is defined as "one of two or more corporations controlled by the same, or substantially the same, owners." Black's Law Dictionary (8 Ed. 2004), 368. In contrast, a parent corporation is defined as one that "has a controlling interest in another corporation * * * usu[ally] through ownership of more than one-half the voting stock." Id. at 367. Here, there is no evidence whatsoever that Pro-Fab, Inc. was an owner of See-Ann, Inc., despite the fact that each corporation was owned by the same individuals and served a similar, but not identical, business purpose. *Page 21 
 {¶ 63} The Belvedere test applies to those situations where plaintiffs have sought to impose liability on individual shareholders or parentcorporations, as the owners and holders of a corporation's stock.Taverns for Tots, Inc. v. Toledo (N.D.Ohio 2004), 307 F.Supp.2d 933, 941
(Piercing the corporate veil for clear abuses of corporate privilege and protections "occurs either where shareholders misuse the corporate structure for personal benefit or advantage, * * * or where a parentcorporation, as the alter ego of a subsidiary company, is not entitled to avoid liability for the subsidiary's misdeeds.") (emphasis added); see also, e.g., Starner v. Guardian Industries (2001),143 Ohio App.3d 461, 466 (parent-subsidiary relationship examined); Ohio CityOrthopedics, Inc. v. Medical Billing and Receivables, Inc., 8th Dist. No. 81930, 2003-Ohio-1881, at ¶ 1 (president and sole shareholder relationship examined).
 {¶ 64} Even then, it is the general rule that "a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation." Starner, 143 Ohio App.3d at 468
(citations omitted); accord Clinical Components, 1997 Ohio App. LEXIS 199, at *8 ("Ohio law permits one corporation to own all of the stock of another corporation as well as to employ common officers and directors * * * [and] other personnel, without risking shareholder liability") (citations omitted) (emphasis added).
 {¶ 65} Thus, the Belvedere test does not apply where neither corporation holds "any [ownership] interest in the other" and "[t]he only common element between the two is the shareholders of each corporation." In re Newtowne, Inc., (S.D.Ohio 1993), 157 B.R. 374, 377. This is because "it is impossible for [the one sister corporation],as a corporation, to exercise any control over [the other sister corporation]." Id. In other *Page 22 
words, under the Belvedere analysis, the first element of the test, otherwise known as the "alter ego" test, cannot possibly be satisfied by Pro-Fab, since there is absolutely no evidence of "control" in the sense implied by that test. See North v. Higbee Co. (1936), 131 Ohio St. 507,513-514 ("The fact that the stockholders in two corporations are the same * * *, such corporations being separately organized under distinct charters, does not make either the agent of the other, nor merge them into one * * *.") (citation omitted).
 {¶ 66} What Minno has attempted to do, and what the majority endorses, is unprecedented, and has been characterized by the one court which has discussed this theory of liability as "triangular piercing." NursingHome Consultants, Inc. v. Quantum Health Servs, .Inc. (E.D.Ark. 1996),926 F.Supp. 835, 840 n. 12.
 {¶ 67} As explained by that court, "a triangular pierce results from a sequential application of the traditional piercing doctrine and the `reverse piercing' doctrine — which itself is controversial in that it allows corporations to be liable for the acts of their shareholders * * * which thereby permits two related, though independent entities (often referred to a[s] `sister corporations') * * * which hold no ownershipinterest in each other, to be held liable for the malfeasance of the other. The linchpin of this theory of liability is that the sister corporations must have a common `parent,' which is usually a third corporate entity * * * though conceptually there is no reason why this parent cannot be a common individual stockholder, especially in cases involving groups of closely held sister corporations." Id. (citations omitted) (emphasis added).
 {¶ 68} As in this case, "liability under a triangular pierce would be imposed by first applying a traditional pierce to render the parent shareholder * * * [individually] liable for the malfeasant sister corporation * * *, and then applying a reverse pierce to render *Page 23 
the * * * sister corporations * * * liable for the parent shareholder * * * and, by extension, the malfeasant sister corporation * * *." Id. (emphasis added). Although the case was not decided on these grounds, the court, in Nursing Home Consultants, acknowledged "serious reservations as to the viability of this `triangular piercing' theory of liability, in that it is plainly out of harmony with both the traditional piercing doctrine and the more novel `reverse piercing' doctrine." Id. Even if the "triangular pierce" theory were tenable, Minno's failure to name Townsend and Myers as defendants renders the application of such a theory of recovery impossible, because the "traditional pierce," under Belvedere, cannot be accomplished without naming the controlling shareholders as parties.
 {¶ 69} Moreover, when limited solely to the viability of the "reverse piercing" theory in situations similar to this, (i.e., where a contract of employment existed between a closely held corporation and the plaintiff, and an alleged tort has been committed), it has been noted that, while "this approach has been allowed [by other courts] in limited cases where the corporation was found to be the alter ego of the controlling shareholders and a creditor has sought to reach assets of the corporate entity to satisfy the debts of the controlling alter ego,the theory has not been embraced by Ohio courts * * *." Winston v.Leak (S.D.Ohio 2001), 159 F.Supp.2d 1012, 1018 (citations omitted) (emphasis added).
 {¶ 70} Since the first element of the Belvedere test is not satisfied, the trial court properly granted summary judgment. However, I also write to briefly address another troubling aspect of the majority's opinion, i.e., the statement that See-Ann's "lack of *Page 24 
liability insurance, at the least, raises a genuine issue of material fact on [the] second prong." Again, I disagree.
 {¶ 71} With regard to this second and third prongs of theBelvedere test, Minno's argument is that Pro-Fab "has used the corporate fiction to commit a fraud, wrong, or inequitable result * * * by subcontracting its work to See-Ann, an entity that admitted in its response to [his] request for production of documents that it carried no liability insurance."
 {¶ 72} I agree with Pro-Fab's argument that the lack of general liability insurance, standing alone, is insufficient where "there was no evidence to show that the lack of insurance caused See-Ann to be undercapitalized nor was there proof that Pro-Fab was the company with the most assets."
 {¶ 73} It must be remembered that the issue of this case is whether Pro-Fab, a "related" corporation, could properly be made a party to the case under a "piercing the corporate veil" theory on the basis of an alleged fraud or wrongful act on the part of See-Ann, a corporation to which, again, Minno offered no evidence of a subsidiary relationship to Pro-Fab.
 {¶ 74} Evidence Rule 411 operates to prohibit the introduction of "[e]vidence that a person was or was not insured against liability * * * upon the issue [of] whether he acted * * * wrongfully. * * * Thus, `the exclusionary principle of Rule 411 applies only where liability insurance is offered to establish * * * culpability.'" Beck v.Cianchetti (1982), 1 Ohio St.3d 231, 235 (citations omitted). As is clear from the arguments raised by Minno, the sole reason See-Ann's lack of insurance is relevant is to establish that Pro-Fab could be held liable as a defendant, due to its "relationship" (and potentially *Page 25 
"deeper pockets"), despite the fact that no evidence was offered that See-Ann, if liable for his injuries, was undercapitalized and unable to pay any potential damages.
 {¶ 75} More importantly, Minno has cited to no legal precedent to support the proposition that a corporation is required to carry general liability or accident insurance. A review of R.C. Chapter 1701, the general corporation statute, reveals no such requirement because, indeed, there is none. One can think of several examples where a corporation has elected not to purchase a general liability policy, instead choosing to self-insure against potential losses. Absent some affirmative evidence in the record suggesting that See-Ann was undercapitalized or insolvent, there was simply nothing to lead a reasonable mind to conclude that See-Ann's decision not to purchase liability insurance was in any way, shape, or form, a "wrongful" act under Belvedere.
 {¶ 76} For the foregoing reasons, I would affirm the judgment of the Trumbull County Court of Common Pleas. *Page 1